**AMERICAN FEDERATED GENERAL AGENCY, INC., Plaintiff,**

v.

**The CITY OF RIDGELAND, MISSISSIPPI, and Gene F. McGee, Mayor, Defendants.**

**No. 3:96–CV–581WS.**

United States District Court, S.D. Mississippi, Jackson Division.

March 30, 1999.

James M. Anderson, H. Wesley Williams, III, Holly Bridges Wiggs, Markow, Walker & Reeves, Jackson, MS, for American Federated General Agency Incorporated, plaintiff.

Forrest W. Stringfellow, Daniel, Coker, Horton & Bell, Jackson, MS, for City of Ridgeland, Mississippi, Gene F. McGee, Mayor, defendants.

## MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

The court has before it the following motions: (1) the motion of plaintiff, American Federated General Agency, Inc. ("Amfed"), for summary judgment pursuant to Rules 56(a) and (c), Federal Rules of Civil Procedure;[1] and (2) the cross-motion of defendants, City of Ridgeland, Mississippi ("Ridgeland") and Gene F. McGee, Mayor ("McGee"), to dismiss[2] or, alternatively, for summary judgment pursuant to Rules 56(b) and (c), Federal Rules of Civil Procedure.[3] Aggrieved that its permit to attach a sign to the Atrium North Building in Ridgeland, Mississippi, where it occupies office space was revoked by Ridgeland pursuant to the city's sign regulations which were adopted in 1991 and subsequently amended in September of 1995 and in March of 1998, plaintiff has instituted this lawsuit against the defen-

---

**1.** Rule 56(a) of the Federal Rules of Civil Procedure provides that "[a] party seeking to recover upon a claim, counterclaim, cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof."

**2.** Rule 12(b) of the Federal Rules of Civil Procedure states in pertinent part: "If, on a motion ... to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such motion by Rule 56."

**3.** Fed.R.Civ.P. 56(b) provides that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof."

Fed.R.Civ.P. 56(c) provides in pertinent part that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

dants alleging a number of grounds for relief. According to Amfed, the defendants are liable because the enactment, interpretation, and application of the regulations in question: (1) impermissibly restricts commercial speech in violation of the First Amendment to the United States Constitution; (2) violates Amfed's equal protection and due process rights under the Fourteenth Amendment of the United States Constitution; (3) constitutes an unjust taking under the Fifth and Fourteenth Amendments of the United States Constitution; (4) constitutes an abuse of police power; and (5) violates Title 42 U.S.C. § 1983.[4] Accordingly, because the plaintiff alleges constitutional violations, this court has jurisdiction over this lawsuit by virtue of Title 28 U.S.C. § 1343(a)[5] and Title 28 U.S.C. § 1331[6] (federal question).

The parties agree that there are no genuine issues of material fact to be resolved and that there remain only questions of law to be determined by the court. Having considered these motions, supporting and opposing memoranda and all exhibits attached thereto, the court finds as follows:

## I. Statement of Facts

The following facts are undisputed by the parties:

1. On June 19, 1995, for a total cost of $95.00, Ridgeland issued Amfed a sign permit to attach a wall sign to the Atrium North Building.

2. AmFed incurred expenses from L Signs, Inc., in the amount of $11,832.95 for the design, construction and partial installation of the sign.

3. On August 3, 1995, Ridgeland revoked the permit issued to Amfed and on August 18, 1995, reimbursed Amfed the $95.00 permit fee.

4. Amfed began paying L Signs, Inc., a sign storage fee in the amount of $30.00 per month beginning August 23, 1995.

5. The governmental interests in the passage of the 1991 Sign Regulations and the subsequent amendments are as follows:

*Section 18–1. Purpose.*

This chapter is adopted for the following purposes:

A. To assist the local business community in providing signage which directs the public to each individual business establishment.

B. To provide for consistent and equitable signage requirements for both large and small businesses.

C. To provide for a reasonable system of control of signs.

D. To encourage a desirable urban characteristic which has a minimum of overhead clutter.

---

4. Title 42 U.S.C. § 1983 provides that, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."

Amfed claims that the defendants violated its civil rights by revoking a permit it had previously issued which allowed Amfed to attach a sign to the Atrium North Building.

5. Title 28 U.S.C. § 1343(a)(3) provides:
(a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

6. Title 28 U.S.C. § 1331 provides that, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

E. To enhance the economic value of the community and each area thereof through the regulation of such things as size, location, design, and illumination of signs.

F. To encourage signs which are compatible with adjacent land use.

G. To reduce possible traffic and safety hazards through sign regulation.

H. To insure that the type and amount of signage accurately reflects the character of the City of Ridgeland. *See The Sign Regulations of the City of Ridgeland, Mississippi, Adopted January 2, 1991, Section 18–1.*

6. Under the 1991 Sign Regulations, a "single office building" is permitted the following signage:

B. *Single Office Building:*

1. Each single office building with two or more tenants shall be allowed one ground mounted project sign per street frontage.

(a) Refer to Appendix A for height, size and set-back requirements of ground signs. The base of all ground signs shall be fully landscaped with planters and/or shrubbery in all directions, not less than the dimensional width of the sign.

(b) The sign shall contain the name of the project and the street address and may contain the owner's name.

2. Each business within a single office building which has an exterior entrance shall be allowed one wall mounted sign no larger than four square feet adjacent to the entrance. *See 1991 Sign Regulations Section 18–3.*

7. The provision regulating signs for a single office building in the 1991 Sign Regulations indicates that the classification requires two or more tenants. *See 1991 Sign Regulations Section 18–3.B.1.*

8. The 1991 Sign Regulations were amended in 1995 to include a definition of "single office building" which reads, "[a]n office building containing four (4) or less tenants." *See 1995 Sign Regulation Amendments Section 18–2.*

9. The Atrium North building is a single building under unified control and ownership with more than four tenants. Def.'s Response to Pl.'s Request No. 1.

10. Amfed is not the name of the project, is not the owner of the building, and does not have an exterior entrance. Def.'s Response to Pl.'s Request Nos. 10, 11, 14, and 16.

11. Under the 1991 Sign Regulations, Ridgeland classified the Atrium North Building as a "single office building." Def.'s Response to Pl.'s Request No. 8.

## II. *SUMMARY JUDGMENT STANDARD*

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Hirras v. National R.R. Passenger Corp.,* 95 F.3d 396, 399 (5th Cir.1996) (quoting Fed. R.Civ.P. 56(c)). The party seeking summary judgment carries the burden of demonstrating that there is no evidence to support the non-movant's case. *Hirras,* 95 F.3d at 399. In ruling on a motion for summary judgment, the court is not to make credibility determinations, weigh evidence, or draw from the facts legitimate inferences for the movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Rather, "it is the province of the jury to access the probative value of the evidence." *Kennett–Murray Corp. v. Bone,* 622 F.2d 887, 892 (5th Cir.1980). "Summary judgment can be granted only if everything in the record demonstrates that no genuine issues of material facts exist." *Id.* It is improper where the court merely believes it is unlikely that the non-moving party will prevail at trial. *National*

*Screen Serv. Corp. v. Poster Exchange, Inc.,* 305 F.2d 647, 651 (5th Cir.1962). However, the facts that are irrelevant or unnecessary to a decision are "non-material" and do not prevent summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Phillips Oil Co. v. OKC Corp.,* 812 F.2d 265 (5th Cir.1987).

## III. *ANALYSIS*

### 1. EXHAUSTION OF REMEDIES

The defendants contend that Amfed should not be entitled to go forward with its suit in this court against the defendants because, argue defendants, Amfed failed to exhaust its state administrative remedies. When this court discovered that AmFed had appealed Ridgeland's denial of a permit to the Circuit Court of Madison County, Mississippi, this court stayed this action in order for AmFed to obtain resolution of the issue in state court. Defendants argue that since this court's Stay Order dated October 20, 1997, Amfed has done nothing with regard to its state administrative appeal other than to seek a voluntary dismissal in state court. By taking this course of action, argue defendants, Amfed did not in good faith comply with this court's order. In spite of these arguments, the court is persuaded that the exhaustion of remedies doctrine is inapplicable in this instance.

■ The public policies served by the exhaustion of remedies doctrine are as follows: (1) to protect administrative agency authority, and (2) to promote judicial efficiency. *McCarthy v. Madigan,* 503 U.S. 140, 145, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). The general rule is "that parties exhaust prescribed administrative remedies before seeking relief from the federal courts." *Id.* at 145–46, 112 S.Ct. 1081, citing *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 50–51, n. 9, 58 S.Ct.

459, 463–64, 82 L.Ed. 638 (1938). While this doctrine is certainly important to our judicial system, it is now well settled that a plaintiff is not required to exhaust administrative remedies prior to bringing a § 1983 action. *Gibson v. Berryhill,* 411 U.S. 564, 574, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973), citing *McNeese v. Board of Education,* 373 U.S. 668, 671, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); *Damico v. California,* 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967). In addition, in determining whether to apply the doctrine, federal courts are to "balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." *McCarthy,* 503 U.S. at 146, 112 S.Ct. 1081.

■ In this case, even if Amfed has "abandoned" its state claims as the defendants contend, those proceedings were not a prerequisite for this court to maintain jurisdiction over a § 1983 suit such as this one. Further, the court is not convinced that Amfed acted in bad faith when it dismissed the state action since it is apparent that the discovery process was much further along in this court than in state court; hence, the matter was closer to resolution here. Therefore, judicial efficiency would best be served by a determination of this matter on the merits in this court. For the forgoing reasons, this court is persuaded that the exhaustion of remedies doctrine should not apply in this case.

### 2. FIRST AMENDMENT

■ Section 18–1 of the 1991 Sign Regulations states Ridgeland's purposes for the regulations. *See 1991 Sign Regulations Section 18–1, supra.* According to these purposes and according to the Affidavit of Mayor McGee, the city had no intentions of restricting the "message" or content of Amfed's or anyone else's[7]

7. By means of the "overbreadth" doctrine, "a party whose own activities are unprotected may challenge a statute by showing that it

substantially abridges the First Amendment rights of parties not before the court...." *Metromedia, Inc. v. City of San Diego,* 453

speech when it adopted the regulations. Amfed has provided the court with no satisfying proof to the contrary. Therefore, the court finds that the relevant ordinances as applied to this case are "content-neutral" restrictions. The general rule is that content-neutral regulations of time, place, or manner are permissible where the regulations satisfy the four-part test announced in *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). *Also see Hang On, Inc. v. City of Arlington,* 65 F.3d 1248, 1254 (1995). Under the *O'Brien* test, "[t]he regulation is valid if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *Id.,* citing *O'Brien,* 391 U.S. at 377, 88 S.Ct. at 1679.

While the *O'Brien* test is the general test used to determine the validity of content-neutral restrictions of speech, the case of *Central Hudson Gas & Electric Corp. v. Public Service Comm'n of New York,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), "continues to govern content-neutral regulations of commercial speech." *MD II Entertainment, Inc. v. City of Dallas Tex.,* 28 F.3d 492, 495 (5th Cir.1994).

■ In the case at bar, there is no dispute between the parties that this case involves a restriction of pure commercial speech. In other words, the speech involved in this case is "an expression related solely to the economic interests of the speaker and its audience." *Central Hudson,* 447 U.S. at 561, 100 S.Ct. at 2349. Commercial speech is afforded a lesser degree of protection than other constitutionally-guaranteed expressions. *Me-*

*tromedia, Inc. v. City of San Diego,* 453 U.S. 490, 507, 101 S.Ct. 2882, 2892, 69 L.Ed.2d 800 (1981). Thus, in this case, the court must analyze the constitutionality of such restriction in accordance with the principles identified in *Central Hudson.*

■ The validity of governmental restrictions on commercial speech is determined by the following four-part test as articulated by the United States Supreme Court: (1) Commercial speech is protected if that speech concerns lawful activity and is not misleading. A restriction on otherwise protected commercial speech is valid only if it (2) seeks to implement a substantial governmental interest, (3) directly advances that interest, and (4) reaches no further than necessary to accomplish the given objective. *Metromedia,* 101 S.Ct. at 2892, citing *Central Hudson,* 100 S.Ct. at 2350–2351. Amfed contends that the revocation of the sign permit and the prohibition against the future attachment of Amfed's sign upon the Atrium North Building are impermissible restrictions upon Amfed's First Amendment right to free speech under the *Central Hudson* test. The defendants, on the other hand, claim that the restrictions placed upon Amfed by the application of the sign regulations are valid under the *Central Hudson* test.

■ The court finds that directing the public to a business location is undoubtably a lawful purpose. There is no contention by the defendants that the sign which Amfed seeks to attach to the Atrium North Building is, in any way, misleading. It merely depicts a logo of a hat with the word "Amfed" attached. Therefore, Amfed's proposal does not run afoul of the first prong of *Central Hudson's* four-prong test for First Amendment protection.

The court now proceeds to the second prong of the *Central Hudson* test to deter-

---

U.S. 490, 510, 101 S.Ct. 2882, 2891, 69 L.Ed.2d 800 n. 11 (1981). However, this doctrine will not be applied in cases involving "commercial speech." *Id.* 101 S.Ct. at 2891

n. 11, citing *Bates v. State Bar of Arizona,* 433 U.S. 350, 381, 97 S.Ct. 2691, 2707, 53 L.Ed.2d 810 (1977).

mine whether a "substantial governmental interest" is involved. Both traffic safety and aesthetic concerns have been held by the United States Supreme Court to constitute substantial governmental interests under the *Central Hudson* test. *Metromedia,* 101 S.Ct. at 2893–94. By the affidavits and deposition testimony of McGee and the Building Official John M. McCollum and in light of the clear purposes stated in § 18–1 of the 1991 Regulations, the court is satisfied that Ridgeland has met its burden of showing that these concerns were contemplated at the time of the passage of the regulations. The court finds that Ridgeland's interest in the health, safety, convenience and welfare of its citizens constitutes a governmental interest which is substantial.

The third and fourth steps of the *Central Hudson* analysis requires the court to consider the "fit" between the legislative ends and the means chosen to accomplish those ends. *Posadas de Puerto Rico Assoc. v. Tourism Co.,* 478 U.S. 328, 341, 106 S.Ct. 2968, 2977, 92 L.Ed.2d 266 (1986). The third step requires an inquiry as to whether the challenged restrictions on commercial speech "directly advance" the government's asserted interest.

The *Metromedia* Court held, "We ... hesitate to disagree with the accumulated, common-sense judgments of local lawmakers and of the many reviewing courts that billboards are real and substantial hazards to traffic safety. There is nothing here to suggest that these judgments are unreasonable." *Metromedia,* 101 S.Ct. at 2893; *cf. City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 54, 106 S.Ct. 925, 932, 89 L.Ed.2d 29 (1986) (holding city has substantial interest in "preserving the quality of life in the community at large"). Likewise, in the case *sub judice,* there is no evidence to suggest unreasonableness of the legislative body's decisions to adopt the regulations in question for their stated purposes.

The fourth and final part of the *Central Hudson* inquiry requires that the restric-

tions upon the commercial speech in question "reach no further than necessary to accomplish the given objective." The word "necessary" is not to be interpreted strictly by courts so as to translate into a "least-restrictive-means" test when applied to commercial speech in assessing the validity of time, place and manner restrictions. *Bd. of Trustees of State Univ. of N.Y. v. Fox,* 492 U.S. 469, 476–77, 109 S.Ct. 3028, 3032–33, 106 L.Ed.2d 388 (1989). The United States Supreme Court stated in *Bd. of Trustees:*

> In requiring that to be 'narrowly tailored' to serve an important or substantial state interest, (citations omitted) we have not insisted that there be no conceivable alternative, but only that the regulation not 'burden substantially more speech than is necessary to further the government's legitimate interests.'

*Id.,* 109 S.Ct. at 3034 (citations omitted).

While Amfed has claimed throughout the course of this litigation that Ridgeland's decision to revoke its sign permit constitutes a "total prohibition of on-premises signage," the court finds that this is an overstatement. While it is true that Ridgeland's classification of the Atrium North Building as a "single office building" prevents, under the regulations, Amfed from attaching a sign upon the building itself, the regulations expressly allow tenants who do not qualify for an exterior sign to include their name on an "exterior directory." *See 1991 Sign Regulations Section 18–2.* This, the court feels, is an alternative means available to Amfed satisfying the final prong of the commercial speech test and an establishment by Ridgeland of a reasonable time, place, and manner restriction.

For the foregoing reasons, the court concludes that the regulations at issue in this case pass constitutional muster under each prong of the *Central Hudson* test. Therefore, Amfed's First Amendment claims are rejected, and summary judgment for the defendants is appropriate.

### 3. EQUAL PROTECTION

Amfed claims that Ridgeland has violated its rights to equal protection under the Fourteenth Amendment to the United States Constitution.[8] Amfed appropriately points to *Plyler v. Doe,* 457 U.S. 202, 216–17, 102 S.Ct. 2382, 72 L.Ed.2d 786, (1982), as authority for the proposition that courts must choose between a rational basis level, an intermediate level, or a strict scrutiny level of review when analyzing equal protection claims. Amfed argues that strict scrutiny should be applied in analyzing its claim against Ridgeland because a "fundamental right" is involved in this case, namely, a restriction upon free speech. However, the United States Supreme Court has held on several occasions that strict scrutiny is not to be applied in the commercial speech context. *See Glickman v. Wileman Bros. & Elliott,* 521 U.S. 457, 117 S.Ct. 2130, 2149, 138 L.Ed.2d 585, n. 6 (1997) ("The concept of commercial speech would be reduced to a relic if the threshold for imposing strict scrutiny were reached simply because certain advertisements evoke vaguely nostalgic themes of indeterminate political import or because the hypersensitive may see the specter of sex in the film of a child eating a peach."); *see also Central Hudson,* 100 S.Ct. at 2350 ("although meriting some protection, [commercial expression] is of less constitutional moment than other forms of speech."). Furthermore, if the regulations in question have passed constitutional muster under the commercial speech test of *Central Hudson,* they likewise pass the appropriate equal protection analysis. *See Posadas,* 106 S.Ct. at 2978 n. 9 ("It should be apparent from our discussion of the First Amendment issue, and particularly the third and fourth prongs of the *Central Hudson* test, that the appellant can fare no better under the equal protection guarantee of the Constitution.") (citation omitted).

■ Clearly the strict scrutiny standard is inappropriate for reviewing equal protection claims where commercial speech is involved. *Dunagin v. City of Oxford, Miss.,* 718 F.2d 738, 752 (5th Cir.1983) (en banc), *cert. denied,* 467 U.S. 1259, 104 S.Ct. 3553, 82 L.Ed.2d 855 (1984). The United States Supreme Court states in *Posadas* that, "[i]f there is a sufficient 'fit' between the legislature's means and ends to satisfy the concerns of the First Amendment, the same 'fit' is surely adequate under the applicable 'rational basis' equal protection analysis." *Id.* 106 S.Ct. at 2978 n. 9, citing *Dunagin v. City of Oxford, Miss.,* 718 F.2d at 752–53. Under the rational basis standard, the court "will not overturn ... a statute unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [the Court] can only conclude that the legislature's actions were irrational." *Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 943, 59 L.Ed.2d 171 (1979).

■ The court finds that the deposition testimony of the defendants' expert, Michael Bridge, where he states that Ridgeland's sign ordinances are applied evenly according to building classification, lends further support to the court's analysis under the second prong of the *Central Hudson* test where this court found a "substantial interest." Thus, Amfed has certainly not met its heavier burden of proving that the regulations are not "rationally related to a legitimate government interest." Like the plaintiffs in *Dunagin,* Amfed has not asserted a meaningful equal protection claim, regardless of whether the rational basis standard or the intermediate standard is used. Accordingly, the court finds that Amfed's constitutional right of equal protection under the Fourteenth Amendment has not been violated, and summary

8. Section 1 of the Fourteenth Amendment United States Constitution provides in part that "[n]o state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

judgment in favor of the defendants is appropriate on this issue.

## 4. SUBSTANTIVE DUE PROCESS AND ABUSE OF POLICE POWER

Amfed contends that the enactment, interpretation, and application of the Ridgeland Sign Ordinances by Ridgeland violates Amfed's Fifth Amendment rights, thereby infringing upon Amfed's right to substantive due process under the Fourteenth Amendment [9] to the Constitution of the United States. Furthermore, Amfed contends that such action toward Amfed is arbitrary and discriminatory, constituting an unreasonable exercise and abuse of police power.

 It is well-established that courts are to review municipal zoning ordinances as "quasi-legislative" in nature which withstand substantive due process challenges if there is "any conceivable rational basis." *FM Properties Operating Company v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996), citing *Shelton v. City of College Station*, 780 F.2d 475, 477 (5th Cir.1986) (other citations omitted). Only government action which is "clearly arbitrary and unreasonable, having no substantial relation to public health, safety, morals, or general welfare" may be held unconstitutional. *Id.*, 93 F.3d at 174, citing *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303 (1926). (other citations omitted). Similarly, a state's exercise of its police power in zoning decisions is not abusive unless there is no conceivable rational basis for the decision. *Shelton*, 780 F.2d at 482.

 As the court has pointed out in its analysis of Amfed's First Amendment claims, Ridgeland's implementation and application of its sign ordinances has not

been shown to be arbitrary and capricious. To the contrary, Ridgeland has satisfied the court that its sign ordinances as enacted, interpreted and applied are substantially related to the general welfare of the community and its citizens. Furthermore, the court finds that the ordinances were enacted by Ridgeland and applied to Amfed in such a manner as to easily meet the "conceivable rational basis" standard for a valid exercise of police power.

## 5. PROCEDURAL DUE PROCESS

 Amfed claims that Ridgeland has violated its procedural due process rights under the Fourteenth Amendment by depriving Amfed of legitimate liberty and property interests. Given the "legislative" nature of the characterization of local zoning decisions, it is questionable whether this court can provide relief for plaintiffs claiming denial of procedural due process. *See Couf v. DeBlaker*, 652 F.2d 585, 590 (5th Cir.1981) (explaining that plaintiffs cannot complain of denial of procedural due process for local zoning decisions). However, it is well-settled, nonetheless, that in order "to determine whether due process requirements apply in the first place [the court] must look not to the 'weight' but to the nature of the interest at stake." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 570–71, 92 S.Ct. 2701, 2705–06, 33 L.Ed.2d 548 (1972), citing *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). Then, if due process requirements apply, a weighing process is used to determine the form of the hearing required by procedural due process guarantees. *Id.*, 92 S.Ct. at 2705.

---

**9.** The Fourteenth Amendment to the United States Constitution provides, in pertinent part, that "No State shall ... deprive any person of life, liberty, or property without due process of law...." U.S. Const. amend. XIV, § 1.

Liberty [10] and property [11] are described by the United States Supreme Court as "broad and majestic terms." *Id.*, 92 S.Ct. at 2706. Even though Amfed has not proven that it has a legitimate claim of entitlement to the interest involved, namely, the right to erect an advertising sign upon the Atrium North Building, the court finds that Amfed was given ample "process" by which to appeal the building administrator's decision to revoke Amfed's permit. The appeal process available to Amfed through the 1991 Sign Regulations allowed Amfed to appeal for a variance to not only the Board of Sign Appeals but also to the Board of Aldermen. Therefore, the court finds that Amfed's right to procedural due process under the Fourteenth Amendment to the United States Constitution was not violated.

## 6. TAKING WITHOUT JUST COMPENSATION

Amfed also contends that Ridgeland's enactment, interpretation, and application of the sign ordinances constitute an unjust taking of Amfed's right to erect a sign without appropriate compensation, resulting in violations of Amfed's rights under the Fifth Amendment as applied to the states through the Fourteenth Amendment to the United States Constitution.

Private property shall not "be taken for public use, without just compensation" under the rights guaranteed by the Fifth Amendment. U.S. Const. amend. V. It is well-settled that "[t]he application of a general zoning law to particular property effects a taking if the ordinance does not substantially advance legitimate state in-

terests, ... or denies an owner economically viable use of his land." *Agins v. City of Tiburon*, 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980), citing *Nectow v. Cambridge*, 277 U.S. 183, 188, 48 S.Ct. 447, 448, 72 L.Ed. 842 (1928); *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 138, n. 36, 98 S.Ct. 2646, 2666, 57 L.Ed.2d 631 (1978). In determining whether property has been taken, a weighing of public and private interests is required. *Id.*, 100 S.Ct. at 2141.

As explained in detail in this opinion, the court finds that Ridgeland's adoption and application of its sign regulations constitute a good faith attempt to advance substantial government interests. When weighed against any "rights" of Amfed to erect an advertising sign on the Atrium North Building, Ridgeland's exercise of its police power to promote the health, safety, and welfare of its citizens is easily more substantial. The ordinances and zoning laws in question in this case advance legitimate state interests without denying economically viable use of the land. The court finds no evidence that Ridgeland's action had so great an impact on the value of Amfed's property as to constitute a compensable taking.

While the United States Supreme Court recognizes that the "Takings Clause" protects property interests other than just fee simple ownership of land, *See Dolan v. City of Tigard*, 512 U.S. 374, 114 S.Ct. 2309, 2316, 129 L.Ed.2d 304 (1994) (Fifth Amendment protects right to exclude others); *Nollan v. California Coastal Commission*, 483 U.S. 825, 831, 107 S.Ct. 3141, 3145, 97 L.Ed.2d 677 (1987) (same), the property rights protected by the Fifth

**10.** In *Board of Regents*, the United States Supreme Court describes liberty as denoting "not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized ... as essential to the orderly pursuit of happiness by free men."

*Board of Regents*, 92 S.Ct. at 2706–07, quoting *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 626, 67 L.Ed. 1042 (1923).

**11.** In *Board of Regents*, the United States Supreme Court held that, "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents*, 92 S.Ct. at 2709.

Amendment are created and defined by state law, *see Lucas v. South Carolina Coastal Council,* 505 U.S. 1003, 112 S.Ct. 2886, 2901, 120 L.Ed.2d 798 (1992), and the Fifth Amendment does not require payment of just compensation for every deprivation of a right recognized by state law. "'Property' as that word is used in the 'Takings Clause,'" said the Eleventh Circuit, "is defined much more narrowly than in the due process clauses." *See Corn v. City of Lauderdale Lakes,* 95 F.3d 1066, 1075, citing *Pittman v. Chicago Board of Education,* 64 F.3d 1098, 1104 (7th Cir. 1995), *cert. denied,* 517 U.S. 1243, 116 S.Ct. 2497, 135 L.Ed.2d 189 (1996); and *Pro-Eco, Inc. v. Board of Commissioners of Jay County, Indiana,* 57 F.3d 505, 511 n. 6 (7th Cir.), *cert. denied,* 516 U.S. 1028, 116 S.Ct. 672, 133 L.Ed.2d 522 (1995). In *Corn* the Eleventh Circuit, citing *Scott v. Greenville County,* 716 F.2d 1409, 1421–22 & n. 20 (4th Cir.1983), concluded that "entitlement to a building permit" is not property protected by the Fifth Amendment's "Takings Clause." Thus, while certain property interests may not be taken without due process, they may be taken without paying just compensation. *Corn,* 95 F.3d at 1075.

 Furthermore, a property owner does not suffer a violation of his rights under the "Takings Clause" of the Fifth Amendment until the owner unsuccessfully has attempted to obtain just compensation through the procedures provided by the State for that purpose. *See Williamson County Regional Planning Commission v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 3121, 87 L.Ed.2d 126 (1985). In other words, a takings claim is not ripe until the claimant has unsuccessfully sought compensation from the state. *Williamson County,* 105 S.Ct. at 3120 n. 13, stating that "because the Fifth Amendment proscribes takings without just compensation, no constitutional violation occurs until just compensation has been denied. The nature of the constitutional right therefore requires that a property owner utilize procedures for obtaining compensation before bringing a § 1983 action." *Id.* There is nothing in the record of the instant case to show that either Amfed or the owner of the property in question ever sought compensation in any Mississippi court on the basis of an alleged taking by the defendants.

Therefore, based on the foregoing authority, this court finds no genuine issue of material fact to be resolved and the defendants shall be entitled to summary judgment as a matter of law on the plaintiff's "taking without just compensation" claim.

## 7. VAGUENESS

 Amfed claims that Ridgeland's sign ordinances are unconstitutionally vague because they do not provide a definition which encompasses a multiple-floor, multiple-tenant office building. According to Amfed, this allows for "arbitrary and capricious" interpretations and applications of the regulations. The Fifth Circuit has very recently explained the vagueness doctrine as one which "protects individuals from laws lacking sufficient clarity of purpose or precision in drafting." *J & B Entertainment, Inc. v. City of Jackson, Mississippi,* 152 F.3d 362, 366 (5th Cir.(Miss.)), citing *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 217–18, 95 S.Ct. 2268, 2276–77, 45 L.Ed.2d 125 (1975). To determine whether ordinances such as those in this case are vague, such ordinances should be viewed "from the standpoint of a person of ordinary intelligence." *Id.* at 367 (citations omitted).

 Amfed argues that a person of ordinary intelligence could not readily ascertain the classification of the Atrium North Building from a thorough reading of Ridgeland's sign regulations. Furthermore, Amfed claims the sign regulations can only be applied in an arbitrary and capricious manner. The 1991 Sign Regulations clearly allow for the classification of "single office building," which is the classification given to the Atrium North Building by the building administrator under these regulations. The Atrium North Building falls under the definition of "of-

fice building" in section 18–2 of the 1991 Sign Regulations, and section 18–3 further clarifies "single office building" as one with "two or more tenants." *See 1991 Sign Regulations* §§ 18–2, 18–3. The court finds that the building administrator was reasonable in classifying the Atrium North Building as a "single office building" under these regulations. Thus, the court concludes that the regulations are neither vague on their face nor as applied.

## 8. IMMUNITY

 Mayor Gene F. McGee was named as an individual defendant in this case. The record is unclear as to whether Amfed is suing McGee in his "individual" or "official" capacity. The defendants argue that defendant McGee ought not be a party to this litigation because he was performing legislative functions at all times relevant to this lawsuit and is, therefore, entitled to absolute immunity from suit if sued in his individual capacity. If McGee is named in his official capacity, argues defendants, he is unnecessary since Ridgeland was also named a party to the § 1983 cause. The court finds defendants' arguments well taken.

 The principle is well ensconced that local legislators are absolutely immune from suit under Title 42 U.S.C. § 1983 for actions which are defined as "legislative duties." *Hughes v. Tarrant County, Texas*, 948 F.2d 918, 920 (5th Cir. 1991) (citations omitted). The individual defendant in this case, McGee, therefore, is absolutely immune from suit for his actions defined as "legislative duties." This court recognizes, however, that "[n]ot all actions taken by an official with legislative duties are protected by absolute immunity—only those duties that are functionally legislative." *Hughes*, 948 F.2d at 920, citing *Minton v. St. Bernard Parish School Board*, 803 F.2d 129, 135 (5th Cir. 1986). In other words, only legislative acts are entitled to absolute immunity, while non-legislative or administrative acts are only entitled to qualified immunity. *Hughes*, 948 F.2d at 920.

The Fifth Circuit has set forth two different tests for determining whether the actions of a legislator are legislative duties or administrative duties. The first test considers whether the underlying facts on which the decision is based are "legislative facts," such as generalizations concerning policy or state of affairs. If the facts used in the decision-making are more specific, such as those that relate to particular individuals or situations, then the decision is administrative. The second test focuses on the particularity of the impact of the state action. If the action involves establishment of a general policy, it is legislative; if the action singles out specific individuals and affects them differently from others, it is administrative. *See Hughes*, 948 F.2d at 921 (quoting *Cutting v. Muzzey*, 724 F.2d 259, 261 (1st Cir.1984), citing Developments in the Law–Zoning, 91 Harv.L.Rev. 1427, 1510–11 (1978)).

While Amfed argues that Ridgeland's actions in the instant case singled it out to be treated differently from others with regard to the signage allowed under the regulations, Amfed offers the court no proof that other businesses located in buildings similar to the Atrium North Building were granted permits to hang signs directly on the building. In fact, the only businesses Amfed points to are those located in buildings which are substantially dissimilar to the Atrium North Building. Further, Amfed points to no individual conduct of McGee which suggests that his actions in any way "singled out" Amfed. The court finds that McGee simply carried out the policies required by his employment in a general manner.

In *Tenney v. Brandhove*, 341 U.S. 367, 377, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), the United States Supreme Court described the historical rationale for the doctrine of absolute legislative immunity. "Legislators," said the Supreme Court, "are immune from deterrents to the uninhibited discharge of their legislative duty, not for their private indulgence but for the public good. One must not expect uncommon

courage even in legislators.... The holding of this Court in *Fletcher v. Peck,* 10 U.S. (6 Cranch) 87, 130, 3 L.Ed. 162, that it was not consonant with our scheme of government for a court to inquire into the motives of legislators, has remained unquestioned."

 The Fifth Circuit extended the doctrine of absolute legislative immunity to local legislators such as the individual defendant in the instant case in *Hernandez v. City of Lafayette,* 643 F.2d 1188, 1193 (5th Cir.1981), *cert. denied,* 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982); *see Dunmore v. City of Natchez,* 703 F.Supp. 31, 32 (S.D.Miss.1988) (holding that legislative immunity extends to city council members and that "such immunity for the individual actions of a councilman or board member is limited to conduct in furtherance of their legislative duty"). This court finds that the individual defendant McGee acted in accordance with his respective legislative duties in the instant case and is entitled to absolute immunity from § 1983 liability for his actions. Further, since it has been established by law that there is "no longer a need to bring official capacity actions against local government officials" under § 1983, *Kentucky v. Graham,* 473 U.S. 159, 167, n. 14, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114 (1985), defendant McGee is hereby dismissed from this lawsuit on the ground of immunity.

## IV. *CONCLUSION*

For the reasons set forth in this opinion, the court finds that the plaintiff has presented insufficient evidence to withstand summary judgment with regard to its constitutional claims against the defendants.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the motion of the defendants, the City of Ridgeland, Mississippi, and Gene F. McGee, Mayor, for summary judgment is hereby granted.

**IT IS FURTHER ORDERED AND ADJUDGED** that the motion of the plaintiff, American Federated General Agency, Inc., for summary judgment is hereby denied.