**M. Riemer CALHOUN, Jr., et al.,**
**Plaintiffs–Appellees,**

v.

**ST. BERNARD PARISH, et al., Defendants,**

**Randolph T. Odinet, et al.,**
**Defendants–Appellants.**

**No. 90–3694.**

United States Court of Appeals,
Fifth Circuit.

Aug. 1, 1991.

---

Charles T. Weigel, Lisa Miley Geary, McGlinchey, Stafford, Celling & Lang, New Orleans, La., for defendants-appellants.

David McLean Culpepper, Murray Andrew Calhoun, Milling, Benson, Woodward, Hellyer, Pierson & Miller, New Orleans, La., for plaintiffs-appellees.

Before REAVLEY, HIGGINBOTHAM, and DUHÉ, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

M. Riemer Calhoun's attempts to construct a low- to moderate-income housing project were frustrated by a series of construction moratoria issued by St. Bernard Parish. He sued the Parish, the Parish's Police Jurors, and the Director of the Parish's Department of Safety and Permits. The suit attacked the ordered delays. The district court denied the Police Jurors' motion to dismiss the claims against them individually on the basis of either absolute or sovereign immunity. They appeal. Finding that the Police Jurors are entitled to a legislative immunity against damages in their individual capacities, we reverse.

**173**

I

In 1987, M. Riemer Calhoun executed an option to purchase a parcel of land in St. Bernard Parish, hoping to construct low- to moderate-income housing. As Calhoun was not a resident of the Parish, he decided to meet with one of the Police Jurors, Henry Rodriguez, in order to secure backing for the project.

Calhoun first discussed the project with Rodriguez in November of 1987, and according to Calhoun, "Rodriguez responded with a vitriolic denunciation of minorities and low to moderate income housing in general." In a meeting later that year, Rodriguez made similar remarks to one of Calhoun's employees, Charlotte Carroll. Rodriguez later drafted and introduced an interim construction moratorium affecting a small area of land, including Calhoun's parcel, and on December 8, 1987, the Police Jury passed the moratorium. Although the moratorium was the first ever enacted by the Police Jury, there is no discussion in the public record of the reasons for its enactment.

The moratorium was due to expire on April 5, 1988, but the Police Jury met and voted to extend the moratorium and increase the required setback from 150' to 250'. Calhoun forged ahead with his project, modifying his plans to include a 250' setback and applying for a building permit. While his application was pending, the Police Jury enacted two more moratoria.

After a lengthy delay, the Parish finally issued the building permit on April 4, 1989, but limited its use to housing for the elderly. Calhoun's efforts to have the permit revised met with little success. Calhoun eventually filed suit in the district court below, alleging violations of 42 U.S.C. §§ 1983 and 3601 and the takings clause of the Fifth Amendment. The Police Jurors moved to dismiss the claims against them individually on the basis of either absolute or qualified immunity, but the district court denied the motion. They appeal.

## II.

The Supreme Court has adopted a functional approach to immunities. As the Court recently explained in *Forrester v. White*, 484 U.S. 219, 108 S.Ct. 538, 542, 98 L.Ed.2d 555 (1988), "we examine the nature of the functions with which a particular official or class of officials has been lawfully entrusted, and we seek to evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions." *See also Butz v. Economou*, 438 U.S. 478, 511, 98 S.Ct. 2894, 2913, 57 L.Ed.2d 895 (1978). With this approach, the Court has extended legislative immunity both to appointed members of a regional planning agency, in a suit challenging one of the agency's ordinances, and to the justices of a state supreme court, in a suit challenging a provision of a state bar code promulgated by the court. *See Lake Country Estates v. Tahoe Planning Agcy.*, 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979); *Supreme Court of Va. v. Consumers Union*, 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980).

Similarly, this court has extended legislative immunity to a mayor for his veto of two rezoning ordinances. We reasoned:

> When the mayor exercises his veto power, it constitutes the policy-making decision of an individual elected official. It is as much an exercise of legislative decision-making as is the vote of a member of Congress, a state legislator, or a city councilman.

*Hernandez v. City of Lafayette*, 643 F.2d 1188, 1194 (5th Cir.1981). *See also Minton v. St. Bernard Parish School Bd.*, 803 F.2d 129 (5th Cir.1986) (remanding issue of legislative immunity of school board).

Although this court has always viewed zoning as a legislative function, at one point, we distinguished "true" zoning ordinances from spot zoning. In *Bayou Landing, Ltd. v. Watts*, 563 F.2d 1172, 1175 (5th Cir.1977), we held that a city council resolu-

tion aimed at one business was not a zoning ordinance. "Zoning ... connotes a non-particularized legislative process in which rules are promulgated and land areas designated on a general, prospective basis." *Id.* Other circuits, cited extensively by Calhoun in his brief, have adopted similar distinctions between general and particularized ordinances. *See, for example, Bateson v. Geisse*, 857 F.2d 1300 (9th Cir.1988); *Scott v. Greenville County*, 716 F.2d 1409 (4th Cir.1983).

In *Shelton v. City of College Station*, 780 F.2d 475 (5th Cir.1986), this circuit put *Bayou Landing* and its progeny to rest. In *Shelton*, we held that the denial of a request for a variance from a zoning ordinance was a legislative decision. *Shelton* rested in part on the state's constitutionally secured right to construct its own procedural apparatus for resolving zoning matters; that it chose to do so in a manner that resembled judicial decisionmaking did not mean that the zoning decisions were not legislative. It followed that the decision at issue was a legislative judgment, an evaluation of legislative facts, even though the legislative decision was not the initial enactment of a zoning code. Rather, the spot zoning remained legislative in character. The result in *Shelton* accords with *Arlington Heights v. Metropolitan Housing Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977), where the Court evaluated the denial of a request for rezoning of a specific parcel of property as a legislative act.[1]

*Shelton* controls the legislative immunity issue in this case. The Police Jurors of St. Bernard Parish are entitled to a legislative immunity against damages in their individual capacities. This holds true regardless of the allegations of discriminatory intent. As the Supreme Court has warned:

> "In times of political passion, dishonest or vindictive motives are readily attributed to legislative conduct and as readily

---

**1.** Several later decisions have mentioned the underlying distinction in *Bayou Landing*, but only in dicta. *See Jackson Court Condominiums v. City of New Orleans*, 874 F.2d 1070, 1074 n. 3 (5th Cir.1989); *County Line Joint Venture v.*

*Grand Prairie, Tex.*, 839 F.2d 1142, 1144–1145 (5th Cir.1988). Curiously, both Calhoun and the appellants cited *Bayou Landing* in their briefs to this court but, for the most part, omitted *Shelton*.

believed. Courts are not the place for such controversies. Self discipline and the voters must be the ultimate reliance for discouraging or correcting such abuses.

*Tenney v. Brandhove,* 341 U.S. 367, 378, 71 S.Ct. 783, 789, 95 L.Ed. 1019 (1951). This does not mean that the state action is constitutional or that the action can stand. Calhoun's claims for injunctive and declaratory relief against the appellants in their *official* capacities survive the motion to dismiss.

The order denying the appellants' motion to dismiss is REVERSED.