**Thomas P. HUGHES, Plaintiff-Appellee,**

v.

**TARRANT COUNTY TEXAS, et al., Hon. Roy English, Dionne Bagsby, Bob Hampton, J.D. Johnson, O.L. Watson, Tim Curry, Ray Rike, Defendants-Appellants.**

No. 91–1219

Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Nov. 29, 1991.

Van Thompson, Jr., Asst. Dist. Atty., Tim Curry, Crim. Dist. Atty., Ft. Worth, Tex., for defendants-appellants.

Grey Pierson, Pierson & Ray, Arlington, Tex., D. Nicholas Acuff, D. Nicholas Acuff

& Assoc., Ft. Worth, Tex., for plaintiff-appellee.

Before JOLLY, DAVIS, and SMITH, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

In Texas state court, contempt proceedings were brought against the appellee, a Texas state court district court clerk, for his failure to comply with the state court's order to resume a particular office practice relating to notification of attorneys. The clerk requested the county commissioners to pay for the attorney's fees he incurred as a result of the contempt proceedings. His request was denied. He then filed a claim in state court alleging, *inter alia*, 42 U.S.C. § 1983 claims against the commissioners, the district attorney, and the assistant district attorney. The defendants removed the case to federal district court and filed a motion for summary judgment, which the district court denied. The defendants appeal, arguing they are entitled, respectively, to legislative and quasi-judicial absolute immunity from this suit. Because we find no error, we affirm.

I

In January 1987, the appellee, Thomas P. Hughes, acting in his official capacity as district court clerk of Tarrant County, Texas, ceased the practice of mailing the monthly dockets of the district court to the attorneys on the mailout list. In February, a judge of the 352nd Judicial District Court ordered Hughes to resume this practice. Hughes requested representation by the district attorney's office. This request was denied, leaving to Hughes the decision whether to seek private counsel. The judge ordered Hughes to show cause why he should not be held in contempt of court for failing to comply with the court's order to resume the mailing practice. Without approval, Hughes retained private counsel to represent him in the contempt proceedings. The judge again ordered Hughes to show cause and then found him in con-

tempt of court. The contempt order was upheld on appeal to the Supreme Court of Texas. *Ex parte Hughes*, 759 S.W.2d 118 (Tex.1988).

On May 5, 1988, Hughes asked the Commissioners Court to pay his private attorney's fees resulting from the contempt proceedings. The Commissioners Court denied the request after receiving a letter from the district attorney's office, stating that, based upon the provisions of the Local Government Code, the Commissioners Court could not legally pay for the fees.

II

Hughes originally brought suit against Tarrant County, in state court, seeking a declaratory judgment declaring the county liable for his attorney's fees. He later amended his complaint, adding the individual county commissioners, the criminal district attorney, and the assistant district attorney of Tarrant County as defendants. He further added claims against all defendants under 42 U.S.C. § 1983 alleging deprivation of his civil rights, denial of equal protection under the Fourteenth Amendment to the Constitution, and conspiracy to deny him of his constitutional rights. The defendants removed the case to federal court and filed a motion to dismiss or for summary judgment, asserting the defenses of legislative and quasi-judicial absolute immunity. The trial court denied the motion.

III

On appeal, the defendants argue that their motion for dismissal or summary judgment should have been granted because they are absolutely immune from suit. The district court's denial of the appellants' claim of absolute immunity is "appealable before final judgment, for the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action." *Mitchell v. Forsyth*, 472 U.S. 511, 525, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985). The county commissioners argue that they are entitled to legislative immunity from this suit because the allocation and expend-

iture of public monies of the county was in the course of their official duties while acting as commissioners. The district attorney and his assistant argue that they are entitled to quasi-judicial immunity. We find no error in the district court's denial of absolute immunity, and therefore, we affirm.

## IV

■ The county commissioners argue that the decision to refuse to compensate Hughes for his attorney fees incurred in the contempt proceedings was a decision regarding the allocation of county monies, and as such was a legislative function. The Supreme Court recognized absolute immunity from suit under 42 U.S.C. § 1983 for state legislators in *Tenney v. Brandhove,* 341 U.S. 367, 371, 71 S.Ct. 783, 785, 95 L.Ed. 1019 (1951). This absolute immunity was extended to regional legislators in *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 399, 99 S.Ct. 1171, 1176, 59 L.Ed.2d 401 (1979). This court further extended absolute immunity to local legislators in *Hernandez v. City of Lafayette,* 643 F.2d 1188, 1193 (5th Cir.1981), *cert. denied,* 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982). Furthermore, legislative immunity not only protects legislators; it also protects officials fulfilling legislative functions. *Minton v. St. Bernard Parish School Board,* 803 F.2d 129, 135 (5th Cir.1986); *Hernandez,* 643 F.2d at 1193.

The Supreme Court "has extended legislative immunity both to appointed members of a regional planning agency, in a suit challenging one of the agency's ordinances, and to the justices of a state supreme court, in a suit challenging a provision of a state bar code promulgated by the court." *Calhoun v. St. Bernard Parish,* 937 F.2d 172, 174 (5th Cir.1991) (citing *Lake Country Estates v. Tahoe Regional Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979), and *Supreme Court of Virginia v. Consumers Union,* 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980)). This court has extended legislative immunity to a mayor for his veto of two zoning

ordinances and to police jurors for their spot zoning decision. *Calhoun,* 937 F.2d at 174, *Hernandez,* 643 F.2d at 1194. In *Hernandez,* this court reasoned:

> When the mayor exercises his veto power, it constitutes the policy-making decision of an individual elected official. It is as much an exercise of legislative decision-making as is the vote of a member of Congress, a state legislator, or a city councilman. *Id.*

In *Calhoun,* this court stated that the spot zoning decision "was a legislative judgment, an evaluation of legislative facts." *Calhoun,* 937 F.2d at 174.

■ Not all actions taken by an official with legislative duties, however, are protected by absolute immunity—only those duties that are functionally legislative. *Minton,* 803 F.2d at 135.

> When an official possessing legislative responsibilities engages in official activities insufficiently connected with the legislative process to raise genuine concern that an inquiry into the motives underlying his actions will thwart his ability to perform his legislative duties, vigorously, openly and forthrightly, he is not entitled to absolute immunity but only to the qualified immunity grounded in good faith that is bestowed upon other government officials. *Id.*

In *Minton,* this court remanded the issue of whether the school board's decision to appropriate funds to pay a tort judgment "involve[d] the degree of discretion and public-policy-making traditionally associated with legislative functions or merely an administrative application of existing policies." *Minton,* 803 F.2d at 135.

Even though this court has addressed the legislative immunity issue, it has not developed a clear standard by which to distinguish between legislative acts entitled to absolute immunity and non-legislative acts entitled only to qualified immunity. Other courts have attempted to establish such a standard. The courts have made a distinction between establishing a policy, act, or law and enforcing or administering it.

In *Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 580 (9th Cir.1984), the court held that city council members were not protected by absolute immunity for their decision to deny rock groups access to the city amphitheater. The court held that the city was simply monitoring and administering the contract with the plaintiff which gave the plaintiff the right to promote live entertainment in the amphitheater. "Administration of a contract does not involve the formulation of a policy.... Rather, it is more the type of ad hoc decisionmaking engaged in by an executive." *Id.*

In *Scott v. Greenville County*, 716 F.2d 1409 (4th Cir.1983), the county counsel refused to issue a real estate developer a building permit to construct low-income apartments, pending consideration of a rezoning proposal. The court held that the county council members were not entitled to legislative immunity. "When local zoning officials do more than adopt prospective, legislative-type rules and take the next step into the area of enforcement, they can claim only the executive qualified immunity appropriate to that activity." *Id.* at 1423.

In *Cutting v. Muzzey*, 724 F.2d 259 (1st Cir.1984), a subdivision developer brought a civil rights action against the members of a town planning board, arguing that they were imposing outrageous conditions on their approval of his development because of their racial animus towards his purchases. The board had decided to condition approval of the development on the completion of a road, rather than accept a bond as a guarantee of the road's completion. In describing the action of the planning board, the First Circuit Court stated:

[i]t is not the enactment of an overall plan or the establishment of general policy, both of which could be said to be legislative in nature. Nor is the action one of determining that some sort of sanction should be imposed for violation of a plan, permit, or license. In such a case the action might be said to be adjudicative. In our case the Planning Board merely decided to insist on completion of

a particular road before granting approval of a specified proposed subdivision. *Id.* at 261.

The court then applied two different tests discussed in *Developments In the Law–Zoning*, 91 Harv.L.Rev. 1427, 1510–11 (1978).

The first test focuses on the nature of the facts used to reach the given decision. If the underlying facts on which the decision is based are "legislative facts," such as "generalizations concerning a policy or state of affairs," then the decision is legislative. If the facts used in the decisionmaking are more specific, such as those that relate to particular individuals or situations, then the decision is administrative. The second test focuses on the "particularity of the impact of the state action." If the action involves establishment of a general policy, it is legislative; if the action single[s] out specific individuals and affect[s] them differently from others, it is administrative.

*Cutting*, 724 F.2d at 261 (citing *Developments In the Law*, 91 Harv.L.Rev. at 1510–11). The court then found that under either test, the action by the board was clearly administrative.

We apply the guidelines suggested by these cases and hold that the challenged conduct by the Commissioners Court was not legislative. Even though the decision concerned the allocation of county monies, it was not based on legislative facts; it was not based on general facts regarding any policy, but instead, it was based on specific facts of an individual situation related to the district court clerk. Furthermore, the action did not purport to establish a general policy; it was particular to Hughes. Because we find that the challenged conduct was not legislative, we hold that the commissioners are not entitled to absolute legislative immunity.

## V

■ The district attorney and his assistant argue that they are absolutely protected from suit based on quasi-judicial immunity. The district attorney and his assist-

ant are being sued because of their opinion letter to the commissioners stating that the Commissioners Court could not lawfully pay Hughes's legal expenses because it would violate the Local Government Code. *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), was the first case in which the Supreme Court addressed the immunity of state prosecutors from liability under § 1983. The Court was concerned that unfounded litigation would interfere with a prosecutor's public duties. *Id.* at 423, 96 S.Ct. at 991.

> The Court therefore held that prosecutors are absolutely immune from liability under § 1983 for their conduct in "initiating a prosecution and presenting the State's case," insofar as that conduct is "intimately associated with the judicial phase of the criminal process." Each of the charges against the prosecutor in *Imbler* involved conduct having that association.... The Court expressly declined to decide whether absolute immunity extends to "those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of an advocate." It was recognized, though, that "the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom."

*Burns v. Reed,* —— U.S. ——, 111 S.Ct. 1934, 1939, 114 L.Ed.2d 547 (1991) (citing *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (internal citations omitted)).

In *Burns,* the Court addressed whether a state prosecutor was entitled to absolute immunity for his participation in a probable cause hearing and for giving legal advice to the police. The Court found that the conduct of appearing before a judge and presenting evidence to establish probable cause for a search warrant involved the prosecutor's "role as advocate for the State" and was "intimately associated with the judicial phase of the criminal process." *Id.* 111 S.Ct. at 1942. Accordingly, the Court found that this conduct was protected by absolute immunity.

The Court reached a different conclusion, however, regarding the advice given by the prosecutor to the police.[1] The Court noted that there is no historical or common law basis for extending absolute immunity to such actions. *Id.* "Absent a tradition of immunity comparable to the common-law immunity from malicious prosecution, which formed the basis for the decision in *Imbler,* [the Court has] not been inclined to extend absolute immunity from liability under § 1983." *Id.* at 1943. The Court also concluded that the risk of vexatious litigation did not support absolute immunity for giving legal advice.

> [A] suspect or defendant is not likely to be as aware of a prosecutor's role in giving advice as a prosecutor's role in initiating and conducting a prosecution. But even if a prosecutor's role in giving advice to the police does carry with it some risk of burdensome litigation, the concern with litigation in our immunity cases is not merely a generalized concern with interference with an official's duties, but rather is a concern with interference with the conduct closely related to the judicial process.... That concern therefore justifies absolute prosecutorial immunity only for actions that are connected with the prosecutor's role in judicial proceedings, not for every litigation-inducing conduct. *Id.*

The Court further noted that even though giving legal advice to the police was a vital obligation of the prosecutor, qualified immunity provides ample protection for prosecutors giving legal advice. The Court stated that it would be "incongruous to allow prosecutors to be absolutely immune from liability for giving advice to the police, but to allow police officers only qualified immunity for following the advice." *Id.* at 1944.

The Court's reasoning in *Burns* controls the case at hand. There is no historical or common law basis to extend absolute immunity to a district attorney when advising

---

1. The prosecutor told police they likely had probable cause to arrest the petitioner.

county officials.[2] In addition, the risk of vexatious litigation arising from the district attorney's giving advice to county officials is not as great as the risk of vexatious litigation arising from the district attorney's role in initiating and prosecuting a case. More importantly, litigation concerning a district attorney's advice to a county official does not interfere with the district attorney's conduct closely related to the judicial process. Finally, given that we have held that the commissioners are not protected by absolute immunity, it would be incongruous to extend absolute immunity to the district attorney and his assistant. To do so, would be to require the commissioners, but not the district attorney and his assistant, to know the clearly established law. Therefore, under the guidelines established by the Supreme Court in *Burns,* we find the district attorney and his assistant are not entitled to absolute immunity from suit arising from their giving legal advice to the Commissioners Court.[3] Accordingly, the decision of the district court denying the motion for dismissal or for summary judgment is

AFFIRMED.

---

**2.** In *Henderson v. Lopez,* 790 F.2d 44 (7th Cir. 1986), the Court of Appeals for the Seventh Circuit found that there is no "historical or common law basis for the immunity enjoyed by a state's attorney when advising state officers."

**3.** The appellants cite *Henderson v. Lopez,* 790 F.2d 44, 46 (7th Cir.1986) as support for their argument. There, the court held that a state assistant attorney was entitled to absolute immunity from suit regarding legal advice she gave. In the light of the recent decision in *Burns v. Reed,* —— U.S. ——, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991), the reasoning in *Henderson* is no longer persuasive.

    In *Burns,* the Court emphasized that the concern over vexatious litigation was not a general-

ized concern with interference with an official's duties, but was a concern with interference with conduct closely related to the *judicial process. Burns,* 111 S.Ct. at 1943. The Court noted that the qualified immunity defense had evolved since *Imbler,* and stated that currently "it provides ample support to all but the plainly incompetent or those who knowingly violate the law. Although the absence of absolute immunity for the act of giving legal advice may cause prosecutors to consider their advice more carefully, '[w]here an official could be expected to know that his conduct would violate statutory or constitutional rights, he should be made to hesitate.'" *Id.*