**BANNUM, INC., Plaintiff,**

v.

**CITY OF BEAUMONT, TEXAS, Stephen J. Bonczek, City Manager for the City of Beaumont, Members of the Planning Commission for the City of Beaumont, and Members of the City of Beaumont City Council, Defendants.**

No. 1:02–CV–563.

United States District Court,
E.D. Texas,
Beaumont Division.

Dec. 12, 2002.

Joseph A. Camardo, Jr. and Kevin M. Cox of Law Firm of Joseph A. Camardo, Jr., Auburn, NY, John Carroll Boudreaux, Houston, TX, for Plaintiff.

Tyrone E. Cooper and Vander Lane Nichols, The City of Beaumont, Beaumont, TX, for Defendants.

## ORDER AND OPINION GRANTING DEFENDANTS' MOTION TO QUASH DEPOSITION NOTICES WITH SUBPOENAS DUCES TECUM AND FOR PROTECTIVE ORDER

SCHELL, District Judge.

This matter is before the court on "Defendants' Motion to Quash Deposition Notices with Subpoenas Duces Tecum and for Protective Order" filed on October 16, 2002 (Dkt.# 12). Plaintiff Bannum, Inc. ("Bannum") filed a response on November 7, 2002 (Dkt.# 14), and Defendants filed a reply on November 25, 2002 (Dkt.# 19). Upon consideration of the briefing and the applicable law, the court is of the opinion that the Defendants' motion to quash and for protective order should be GRANTED.

## I. BACKGROUND

Bannum alleges that the Defendants[1] violated its constitutional rights by denying Bannum's application for a specific use permit for the operation of a "halfway house" at 1255–1257–1259 Broadway in Beaumont, Texas ("Broadway property"), on June 17, 2002. Defendants subsequently granted a specific use permit to operate a halfway house to Dismas Charities. Bannum and Dismas Charities were in competition with each other for a contract to be awarded by the Federal Bureau of Prisons requiring commencement of performance on November 1, 2002. Bannum claims that Defendants have acted "arbitrarily and capriciously". Bannum seeks to depose members of the Beaumont City Council, members of the Planning and Zoning Commission, the City's Planning Director, and the City Clerk.

## II. LEGAL STANDARD

The question presently before the court is whether legislative immunity attached to the actions of the individual Defendants, thus shielding them from liability in their personal capacities. If shielded from liability by absolute legislative immunity, evidentiary and testimonial privileges preclude the Plaintiff from deposing the Defendants. See *Marylanders for Fair Representation, Inc. v. Schaefer,* 144 F.R.D. 292, 296 (D.Md.1992). Therefore, the court must determine if the denial of the specific use permit was a legislative act. If the denial was legislative in nature, the individual defendants may not be held liable in the current action. *Gravel v. United States,* 408 U.S. 606, 624, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972); *Bogan v. Scott–Harris,* 523 U.S. 44, 53, 118 S.Ct. 966, 140 L.Ed.2d 79 ("[T]he exercise of legislative discretion should not be inhib-

---

1. Bannum named in its complaint the City of Beaumont; the Defendant members of the Planning Commission: Laurie Leister, Gregg Dykeman, Bill Lucas, Glen Bodwin, Marty Craig, Carlos Hernandez, and Walter Kyles; the Defendant members of the City of Beaumont City Council: Mayor Pro–Tem Lulu Smith, Council members Andrew Cokinos, Becky Ames, Guy Goodson, Bobby Patterson, and Audwin Samuel (collectively referred to as "Defendants").

ited by judicial interference or distorted by the fear of personal liability."). If the denial of the specific use permit was administrative or quasi-judicial, the individual defendants are not shielded from civil liability by absolute immunity,[2] and, therefore, are not entitled to the protection against the discovery sought in the instant motion. *Minton v. St. Bernard Parish Sch. Bd.,* 803 F.2d 129, 135 (5th Cir.1986).

■ Legislative immunity protects those performing legislative acts, regardless of the title of their positions, and regardless of whether they were elected or appointed. *Calhoun v. St. Bernard Parish,* 937 F.2d 172, 174 (5th Cir.1991) (citing *Lake Country Estates v. Tahoe Reg'l Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979)). The focus of the analysis is on the nature of the accused act. *Bogan,* 523 U.S. at 54, 118 S.Ct. 966. In *Bogan,* the United States Supreme Court found that the ordinance in question was legislative because it "reflected a discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provides to its constituents." *Id.* at 55–56, 118 S.Ct. 966. The Fifth Circuit Court of Appeals in *Hughes v. Tarrant County Texas* established its own test to determine whether an act is legislative or administrative. 948 F.2d 918 (5th Cir.1991). That standard comports with the rules of *Bogan:* legislative acts that involve policymaking and discretion are afforded absolute legislative immunity. *Hughes,* 948 F.2d at 920–921; *Bogan,* 523 U.S. at 55–56, 118 S.Ct. 966. *Compare Bryan v. City of Madison,* 213 F.3d 267, 274 (5th Cir.2000) (concluding that actions involving a decision to rezone a property were entitled to legislative immunity) *with Homeowner/Contractor Consultants v. The Ascension Parish Planning and Zoning Comm'n,* 32 F.Supp.2d 384, 389 (M.D.La. 1999) (concluding that the Planning Commission did not have absolute legislative immunity for a decision to approve a preliminary plat). The more specifically focused the action is, the more likely it is to be considered administrative in nature, and the more the general community is affected by the action, the more likely it is a legislative act. *See Bartlett v. Cinemark USA, Inc.,* 908 S.W.2d 229, 235 (Tex.App.-Dallas, 1995, no writ) (interpreting *Hughes* ).

## III.  APPLICATION

In the instant action, Bannum seeks recourse from the Planning Commission and City Councils' decision denying it a specific use permit to operate a halfway house at the Broadway property. *First Am. Compl.* at ¶ 21. The halfway house would provide food and housing for thirty individuals upon release from incarceration of the Federal Bureau of Prisons. *Id.* at ¶ 10. The City Council later approved a specific use permit allowing another company to operate a halfway house at a location different from Bannum's proposed site. *Id.* at ¶ 26.

■ Bannum contends that the granting or denying of a specific use permit is *per se* administrative, and therefore not entitled to the protection of absolute legislative immunity. *See Pl.'s Resp. to Def.s' Mot. to Quash* at 1. Bannum's own words in the complaint establish, however, that this was not an administration decision, but rather a legislative action based on broad policy concerns and the City Council's own discretion. Bannum attempts to look beyond the actual decision

---

**2.** A finding that absolute legislative immunity is not applicable does not preclude a subsequent finding that the individual defendants are shielded from liability by another type of immunity, such as qualified immunity. However, the court need not reach this issue.

to the underlying motivation of the council members, but the Supreme Court has determined that that type of inquiry is inappropriate. *Bogan,* 523 U.S. at 54, 118 S.Ct. 966 ("Whether the act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it.").

The complaint states that the decision to deny the specific use permit to Bannum revolved around a debate over public safety. The complaint alleges that Bannum wrote a letter to Beaumont City Manager Stephen J. Bonczek stating its intention to contract with the Bureau of Prisons for the operation of a halfway house at the Broadway property. *First Am. Compl.* at ¶ 13. Mr. Bonczek responded that the requested location was not in the best interest of the surrounding community: "The City Administration has determined that this location is not in the best interest of the community, specifically the surrounding churches and businesses." *Id.* at ¶ 14. A representative of Bannum replied to Bonczek with a letter detailing Bannum's exemplary history in running halfway houses without adversely affecting the surrounding areas. *Id.* at ¶ 15. Also, Bannum pointed out that Beaumont Police Chief Tom Scofield and City Planning Manager Stephen C. Richardson supported Bannum's specific use permit to run the halfway house based on their professional opinions that the location would not pose a danger to the community. *Id.* at ¶ 19–20. When the Council rejected Bannum's permit application, Bonczek stated that Bannum did not "respond to the community as a company" and did not "reach out" to the community. *Id.* at ¶ 24. Thus, by Plaintiff's own contentions, the decision was about the perceived danger to the community posed by a halfway house at the Broadway property:

> The decision of the Planning Commission/City Council was arbitrary and capricious, and discriminatory on its face, in that those opposed to the permit presented the Planning Commission/City Council with no documented facts or evidence which would tend to prove, or substantiate in any way, that Bannum's proposed use of the Beaumont property was injurious to the community. Rather, those opposed to the permit simply discussed their unsubstantiated fears of potential residents of the halfway house. Furthermore, Bannum presented the Planning Commission/City Council with documentary support that the proposed halfway house would not be injurious to the community.

*Id.* at ¶ 23. Bannum disagreed with the final decision of the Council and filed this suit.

According to Plaintiff's complaint, the Council believed that Bannum's proposed location constituted a threat to the surrounding community, while Bannum asserted that it did not. Bannum supported its position with ample recommendations, but the Council rejected the application for the permit. Bannum's chief complaint is that the Council's decision to reject its permit was arbitrary because of Bannum's data supporting the belief that the halfway house would not pose a danger to the surrounding community and because of the recommendations of the Police Chief and the Planning Manager. Therefore, the decision by the council to reject Bannum's application and grant Dismas Charities' application at a different location was a decision based on the potential effect the halfway house would have on the community. The denial "reflected a discretionary, policymaking decision" implicating the city and specific communities. *See Bogan,* 523 U.S. at 55, 118 S.Ct. 966.

A specific use permit directly affects the rights of one company, but the larger issue

of the placement of a residence that will house thirty former federal prisoners inherently implicates a larger number of interested parties. The Planning Commission and City Council made a discretionary decision on the issue of where a halfway house should best be placed in order to minimize the risk of adverse effects on the area. Bannum may not sue because it believes that decision was against the weight of the evidence presented. The City Council is under no obligation to follow the recommendation of the Police Chief or the Planning Commissioner. The City Council could have decided, in its discretion, that no specific use permit would be granted for a halfway house at all. Ultimately, the decision to grant a specific use permit for the housing of formerly incarcerated federal prisoners, and then the decision on where to place that facility, were policy decisions implicating the interests of the city as a whole. That type of decision is essentially legislative, and therefore protected by absolute legislative immunity.

## IV. CONCLUSION

Upon consideration of the motion, the response, and the applicable law, the court is of the opinion that the Defendants' motion to quash the deposition notices and for a protective order should be and is hereby GRANTED.