# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 6, 2008

Charles R. Fulbruge III
Clerk

———

No. 06-31251

———

ROBERT CRAIG; CLARENCE E SPOTTSVILLE; BOBBIE J MCFARLAND

Plaintiffs - Appellees-Cross-Appellants

v.

POLICE JURY GRANT PARISH; W C HOLLOWAY, Individually and as a member of the Grant Parish Police Jury; JULIUS FRED SCOTT, Individually and as a member of the Grant Parish Police Jury; MICHAEL L BROWN, Individually and as a member of the Grant Parish Police Jury; DONNIE BROWN, Individually and as a member of the Grant Parish Police Jury; MARVIN DELONG, Individually and as a member of the Grant Parish Police Jury; MELVIN E GENE ALLEN, Individually and as a member of the Grant Parish Police Jury

Defendants - Appellants-Cross-Appellees

———

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 1:03-CV-147

———

Before BENAVIDES, CLEMENT and PRADO, Circuit Judges.

PER CURIAM:[*]

Defendants appeal the district court's denial of their motion for summary judgment on the issue of immunity in their individual capacities. Plaintiffs

———

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

cross-appeal the district court's grant of the defendants' motion for summary judgment on a state law claim.  We affirm in part and reverse in part.

## I. FACTS AND PROCEEDINGS

Youngblood Road was a loop-road north of Colfax, Louisiana that had an access point to Louisiana Route 158 on its southern end and an access route to Route 158 on its northern end.  On April 11, 2002, the Grant Parish Police Jury made and carried a motion to set a public hearing on May 9, 2002 to hear comments on the abandonment of the maintenance of 1.3 miles of North Youngblood Road.  A notice was published in the Colfax Chronicle, the official journal of the police jury.  The hearing was held, but no members of the public attended to comment.  The jury subsequently voted unanimously to pass an ordinance abandoning maintenance of a portion of the road.  One resident owned all of the property adjoining the closed portion of the road, and that closure blocked the northern access to Route 158 so that Youngblood Road was no longer a loop-road.

The three plaintiffs who own immovable property which abuts Youngblood Road, but not the abandoned portion of the road, filed suit.  They named the Grant Parish Police Jury and its members, individually and in their official capacities, as defendants.  The complaint, filed on January 27, 2003, alleged that the abandonment constituted a taking without just compensation and that the decision to abandon the road section was made without giving the plaintiffs proper notice, thereby violating their constitutional due process rights and subjecting the defendants to liability under 42 U.S.C. § 1983.  The plaintiffs also alleged that the abandonment was in violation of Louisiana law.

On September 29, 2003, the defendants moved to dismiss the suit pursuant to Federal Rule of Civil Procedure 12(b)(5) for insufficiency of service of process and Rule 12(b)(6) for failure to state a claim.  Among other arguments, the defendants claimed that they were absolutely immune from liability for their

legislative activities. The district court denied the defendants' motion. Regarding legislative immunity, the court concluded that the decision to abandon the road was not one of general policy, nor did it affect anyone other than those individuals who owned property along it. The court held that the decision was administrative, not legislative, so legislative immunity did not apply.

The defendants appealed the denial of their motion. This Court affirmed the district court, holding that "the pleading does not allege action necessarily legislative in nature, as the district judge explained." Craig v. Grant Parish Police Jury, 108 F. App'x 899, 900 (5th Cir. 2004).

During discovery, several depositions were taken of police jurors who were serving terms at the time of abandonment. Police juror Michael Brown stated that another juror, Marvin Delong, had moved to abandon the road, telling other jury members that closing a portion of the road would save the jury money and allow them to upgrade the portion of the road that remained open. Because Grant Parish was one of the poorest parishes in the state, Brown explained that closing part of the road to bring the remaining portion up to standard was part of the stated reason for the closure. Brown stated that, although he had heard rumors of drug activity along Youngblood Road, it was not mentioned at a police jury meeting.

Another police juror, Donnie Brown, indicated that the railroad company had wanted the jury to close some crossings and Youngblood Road was the crossing with the least amount of traffic. However, Randall Briggs, the Grant Parish Manager at the time, had no recollection of any specific discussions with the railroad company regarding the Youngblood Road crossing. He stated that he had many discussions with the railroad about closing crossings and the Youngblood crossing could have been one of those considered for closure because

of safety concerns. Delong testified that the railroad company had not asked for any specific crossings to be closed.

Police juror Bobby Chelette[1] recalled that during the police jury's discussions regarding Youngblood Road, Delong only indicated that the reason for closure was the savings that would accrue from stopping maintenance of that portion of the road. Chelette testified that the police jury welcomed closing any road because they had only two graders to grade about 200 miles of gravel roads in his and Delong's districts.

Police juror W. C. Holloway stated that Delong or others cited the risk of cows being hit by cars and incidents of drug-dealing on the road as justifications for closure. However, Holloway did not recall any other reasons for closure or why closure of only part of the road was proposed. Police juror Melvin Allen testified that, at the meeting where the jury voted to close a portion of the road, the police jurors discussed that the portion at issue was dangerous because of a railroad crossing.

Residents of the vicinity of Youngblood Road were also deposed. Richard Crain testified that the road was used for drug-dealing before the abandonment while it was still a loop-road. He owned a trailer park along the road and people in the trailer park complained about the traffic to purchase drugs. Crain noted that acts of vandalism and theft had occurred in the area, but testified that there had been no problems since the road was closed.

Irene Youngblood, another resident of Youngblood Road, testified that the road had become a public road when the individual who owned the property on both sides of it at the time had asked that it become a public road. When the road was opened as a loop-road, drug-dealing and acts of vandalism started. Youngblood had not spoken to Delong about the road closure. She indicated that

---

[1] Chelette's name is incorrectly spelled in his deposition as "Shalette."

4

the police jury graded the road and maintained the ditches along it while it was open.

Todd Vallee owned the land on both sides of the portion of the road that was closed. He testified that he was concerned about his own liability for failing to fence in his cows to prevent accidents. He also indicated that the loop-road was used by drug dealers, and reported that his wife had been offered marijuana on the road while his children were in the car. Vallee had approached Delong's predecessor as police juror for his district about closing the loop-road, but the juror refused. Vallee testified that Delong and other jury members later contacted him about closing the road to save money on maintenance, and that he had no objection to closing it. Vallee also indicated that he had complained to the jury about maintaining the road properly and providing police presence on the road. Vallee had read a local article describing the decision to close the road as political favoritism, but he denied his ability to obtain a political favor.

Delong testified that the road abandonment issue was raised by Vallee who left a message on his answering machine. He said that Vallee told him that the road needed to be maintained or closed. Delong asked the road superintendent, Nick Slayter, to look at the road. According to Delong, Slayter told him that it would require several thousand dollars of maintenance. Slayter testified that he never gave Delong cost estimates, but that he did tell Delong that the road needed work performed on it. "[I]t needed grading and . . . a few loads of pit run, just routine maintenance."

Plaintiff Robert Craig, who owned property along Youngblood Road, testified that he only had access to his property from the southern entrance to Youngblood Road. The closure of the northern access to Youngblood Road forced him to travel an additional 1.5 miles to access his property.

On September 5, 2006, the defendants moved for summary judgment. Among other arguments, they claimed that they were entitled to absolute

legislative immunity.  In a footnote, they argued in the alternative that they were entitled to qualified immunity and absolute quasi-judicial immunity.

The district court denied the defendants' immunity claims, stating:

> [W]e find, pursuant to the Fifth Circuit's ruling on defendants' earlier appeal . . . , that no such immunity is applicable in this case, as the act contemplated in plaintiffs' complaint is not legislative in nature.  We find, as did the Fifth Circuit, that the abandonment of the northern portion of Youngblood Road was an act relating to only a few individuals and was undertaken on the basis of specific facts.  Therefore, we decline to depart from the findings of the Fifth Circuit and will not apply absolute legislative immunity to defendants in this matter.

Craig v. Grant Parish Police Jury, No. 03-0147, slip op. at 4 (W.D. La. Oct. 25, 2006).  The district court granted the defendants' motion for summary judgment on the state law claim, finding that the defendants' decision to abandon the road was not arbitrary and capricious. Id. at 9.

The defendants appealed and the plaintiffs cross-appealed.

## II. STANDARD OF REVIEW

> This court reviews grants and denials of summary judgment de novo, applying the same standards as the district court. Summary judgment is proper when there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law.  Facts are material if they might affect the outcome of the lawsuit under the governing law.  All facts and inferences must be viewed in the light most favorable to the nonmoving party.

United States v. Corpus, 491 F.3d 205, 209 (5th Cir. 2007) (internal citations omitted).

## III. DISCUSSION

As an initial matter, both parties conceded at oral argument that the defendants would not be liable in their individual capacities for a takings claim. Thus, there is no need for us to determine whether that claim is ripe for this Court to have jurisdiction over it under Williamson County Regional Planning

6

Commission v. Hamilton Bank of Johnson City, 473 U.S. 172, 195 (1985) and Urban Developers LLC v. City of Jackson, Mississippi, 468 F.3d 281, 292–93 (5th Cir. 2006).

A.     Absolute Legislative Immunity

"The principle that legislators are absolutely immune from liability for their legislative activities has long been recognized in Anglo-American law." Bogan v. Scott-Harris, 523 U.S. 44, 48 (1998). "Recognizing this . . . tradition, [the Supreme Court has] held that state and regional legislators are entitled to absolute immunity from liability under § 1983 for their legislative activities." Id. at 49. The Supreme Court has also held that "local legislators are . . . absolutely immune from suit under § 1983 for their legislative activities." Id. This Circuit has extended "legislative immunity against damages in their individual capacities" to police jurors. Calhoun v. St. Bernard Parish, 937 F.2d 172, 174 (5th Cir. 1991).

"Not all actions taken by an official with legislative duties, however, are protected by absolute immunity—only those duties that are functionally legislative." Hughes v. Tarrant County Tex., 948 F.2d 918, 920 (5th Cir. 1991). "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." Bogan, 523 U.S. at 54. This Circuit has applied guidelines borrowed from the First Circuit to determine if an act is legislative. Hughes, 948 F.2d at 921. The First Circuit examines the "nature of the facts used to reach the given decision," then "focuses on the particularity of the impact of the state of action." Cutting v. Muzzey, 724 F.2d 259, 261 (1st Cir. 1984) (internal quotations omitted). Applying these tests and other precedent as guidelines in Hughes, this Circuit held that a county commissioners court did not engage in a legislative act when it decided not to pay a court clerk's private attorney's fees in a contempt proceeding because such a payment violated local law. Hughes, 948 F.2d at 919, 921.

In Bryan v. City of Madison, Mississippi, this Circuit applied the same guidelines as in Hughes to evaluate a series of actions by local officials regarding a proposed apartment development. 213 F.3d 267, 273 (5th Cir. 2000). This Circuit held that the mayor's vetoes of the city board's determination that the development plan satisfied city zoning ordinances or building requirements was non-legislative, because this decision did not determine policy but, rather, "entered the realm of 'enforcement' with respect to 'approval of a specified proposed' plan." Id. The mayor's decisions to delay the board's approval of proposed development plans at various board meetings was also held to be non-legislative because "[t]he point at issue in those meetings was specifically and particularly related to the proposed development." Id. at 274. The mayor's and board members' decision to vote to apply for a rezoning was determined to be non-legislative because private citizens could make the same application and, thus, the act was "more like ad hoc decisionmaking than the formulation of a policy." Id. However, this Circuit did grant legislative immunity for events at a board meeting where the mayor placed a rezoning decision on the agenda. Despite being "irregular and inappropriate," these activities "were still legislative in nature because they involved a rezoning provision." Id.

As an initial matter in our analysis, it is clear that the district court erred in relying on this Circuit's previous limited holding that "the pleading does not allege action necessarily legislative in nature" as the basis for its decision to deny the defendants' motion for summary judgment. Craig v. Grant Parish Police Jury, 108 F. App'x 899, 900 (5th Cir. 2004). Although a denial of a motion to dismiss and denial of a motion for summary judgment are reviewed similarly, a district court may not dismiss a case for failure to state a claim pursuant to Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no plausible set of facts that would entitle him to relief. Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1968 (2007). A motion for summary judgment may be granted

if "there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." United States v. Corpus, 491 F.3d 205, 209 (5th Cir. 2007). This Circuit did not review the absolute legislative immunity issue under the summary judgment standard, so the district court's reliance on that holding was in error.

Based upon a review of the record, there is no genuine issue regarding any material fact. The decision to abandon a portion of Youngblood Road was initiated by police juror Marvin Delong after receiving complaints from Todd Vallee. Vallee had a personal interest in having the road closed because of his own liability for his cattle and concerns about drug activity on the road. He expressed his concerns to Delong about the need to maintain the road and to provide police presence on the road. When raising the issue to abandon the road to his fellow police jurors, Delong noted that it would allow the jury to save money to upgrade other portions of the road. Although the plaintiffs dispute whether Delong received an estimate from the road superintendent that it would cost several thousand dollars to maintain the road, they concede that the road superintendent told Delong that the road would need grading and pit run as routine maintenance. The police jurors' decision to close the road was at least in part related to the allocation of Grant Parish's limited resources.

This Circuit "did not choose any one of [the] particular standards [in Hughes], but instead used them as general guidelines." Bryan, 213 F.3d at 273. Because of the size and economic status of Grant Parish, we note that the specific holdings from the Supreme Court's and this Circuit's precedents are more helpful than the Hughes guidelines in deciding whether the jury's actions were legislative in nature. In Bogan v. Scott-Harris, the Supreme Court held that city officials were entitled to legislative immunity in deciding to eliminate an employee's position in anticipation of a reduction in state aid. 523 U.S. 44, 46–47, 56. That action was taken while charges of racial and ethnic slurs that

the employee had filed against another employee were pending. Id. at 46–47. The Court rejected the court of appeals' reliance on the officials' subjective intent, but pointed out that "[t]he privilege of absolute immunity would be of little value if [legislators] could be subjected to the cost and inconvenience and distractions of a trial upon a conclusion of the pleader . . . ." Id. at 54 (internal quotations omitted). The Court reasoned that the officials' actions were "integral steps in the legislative process." Id. at 55. There was no need to determine if the

> formally legislative character of petitioners' actions [was] alone sufficient to entitle petitioners to legislative immunity, because here the ordinance, in substance, bore all the hallmarks of traditional legislation. [It] reflected a discretionary, policymaking decision implicating the budgetary priorities of the city and the services the city provides to its constituents.

Id. at 55–56. Also, the ordinance involved eliminating an entire position, not firing a particular employee. Id. at 56.

Like the officials in Bogan, the police jury here conducted "integral steps in the legislative process" by passing an ordinance and deciding to cease maintenance on a road, ostensibly to save money. Bogan rejects the consideration of subjective intent, such as Delong's alleged intent to help Todd Vallee. Objectively, the police jury passed an ordinance implicating the fiscal priorities of the parish, which bears "the hallmarks of traditional legislation."

The actions of the Grant Parish Police Jury are analogous to the actions taken by the police jury in Calhoun v. St. Bernard Parish, 937 F.2d 172 (5th Cir. 1991). In that case, the police jury enacted moratoria to prevent the building of low- to moderate-income housing, but ultimately issued a building permit which was limited to housing for the elderly. Id. at 173. St. Bernard Parish's actions were determined to be legislative acts. Id. at 174. Similarly, the Grant Parish officials here passed an ordinance deciding to abandon maintenance of a portion of a road. Grant Parish's actions have an additional hallmark of legislation

because they involved the allocation of parish resources, a traditional legislative activity. Bogan, 523 U.S. at 55–56.

The Grant Parish officials' actions are also analogous to the decision by the mayor in Bryan v. City of Madison, Mississippi to place a rezoning decision on the board of aldermen's agenda, which was held to be a legislative act. 213 F.3d 267, 274 (5th Cir. 2000). Like the mayor's placement of a rezoning decision on the agenda at an unscheduled meeting, Delong's motion to close the road was a formal act within his powers as a legislator. The Grant Parish officials' actions have the additional formal characteristics of a legislative act in that they had a public hearing on the matter and later voted to pass an ordinance abandoning maintenance.

Because the Grant Parish Police Jury's actions of receiving a complaint from a resident, discussing the issue at a meeting, holding a public hearing on the issue, and passing an ordinance were integral steps in the legislative process, and, because the ordinance, in substance, bore the traditional hallmark of legislation by implicating the parish's budgetary considerations, the abandonment was a legislative act. The police jurors are therefore entitled to absolute legislative immunity in their individual capacities.

B. Qualified Immunity

Notwithstanding the police juror's absolute legislative immunity, we hold they are also entitled to qualified immunity. "The well-established test for qualified immunity requires [this Court] to engage in a two-step inquiry. First, [this Court] must determine whether a public official's conduct deprived a § 1983 plaintiff of a 'clearly established' constitutional or statutory right." Sanchez v. Swyden, 139 F.3d 464, 466 (5th Cir. 1998) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

"Second, a public official may successfully assert the defense of qualified immunity even though the official violates a person's civil rights, provided the official's conduct was objectively reasonable." Sanchez, 139 F.3d at 467. "Whether an official's conduct is objectively reasonable depends upon the circumstances confronting the official as well as 'clearly established law' in effect at the time of the official's actions." Id. (citing Anderson, 483 U.S. at 641). "The subjective intent of the public official is irrelevant, and the official's knowledge of the relevant law need not rise to the level of a 'constitutional scholar.'" Id. (citing Harlow, 457 U.S. at 815–17).

"Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of any party, whether unlettered or well versed in commercial practice . . . ." Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 800 (1983). The Supreme Court's decision in Mennonite involved the notice due the holder of a mortgage on property sold at a tax sale. Id. at 792–94.

The plaintiffs argue that their due process rights were violated because the police jury did not mail them notice of the public hearing regarding the abandonment of a portion of Youngblood Road that did not abut their property. The property right at issue in Mennonite was a mortgage. If the plaintiffs here were naked owners or mortgage holders of the portion of Youngblood Road that was closed, then they may similarly have a clearly established due process right to notice by mail of the police jury's proceedings. However, plaintiffs concede that under Louisiana law, naked ownership of the public roads is held by the state or its political subdivisions. A review of Supreme Court and Fifth Circuit precedent yields no case where notice by mail was extended to anyone other than individuals with an actual ownership interest, such as naked owners, mortgagees, and creditors. The due process right of notice by mail has not been extended to owners of property adjacent to a property that was the subject of a

proceeding. Consequently, it would not have been sufficiently clear to the police jurors that they were violating the rights the plaintiffs claim because their property does not even abut the portion of the road that was abandoned.

The plaintiffs argue that three Louisiana cases give them a property interest in public roads. Jones Island Realty Co. v. Middendorf involved a defendant who had constructed a building on land fronting a highway. 185 So. 881 (La. 1939). The owner of the land had given the state only a servitude for the highway and was still the owner of the highway and the property on which the defendant had built. Id. at 882. The plaintiff quotes dicta from that case, which the court quoted from a secondary source, noting that "[a]n abutting owner has . . . certain private rights which arise from his ownership of property contiguous to the highway." Id. (internal quotations omitted). That language may suggest other rights, such as a general right of use or access, but does not clearly establish that the abutting owner has an ownership interest in public property.

Neither City of New Orleans v. Carrollton Land Co., 60 So. 695 (La. 1913), nor Giambelluca v. Parish of St. Charles, 687 So. 2d 423 (La. App. 1996), are applicable. Carrollton Land Co. states that public things are held for public use, but the issue in that case concerned whether a city owned property of which a company had taken possession. 60 So. at 696. Giambelluca holds that members of the public may challenge the abandonment of a public road. 687 So. 2d at 428. Those cases suggest a right to use in public property, but do not in any way clearly establish an ownership interest in public things that would require notice by mail.

The plaintiffs' argument runs contrary to basic Louisiana property law principles. The Louisiana Supreme Court has explained that "things" are divided into (1) common things, (2) public things, and (3) private things. City of New Orleans v. T. L. James & Co., 685 So. 2d 111, 112 (La. 1997). The court

noted "'public things are insusceptible of private ownership.'" Id. (quoting A. N. Yiannopoulos, 2 Louisiana Civil Law Treatise—Property § 45 (3d ed. 1991)). "Immovable property owned by a political subdivision in its capacity as a public person is public property . . . ." Id. at 113. The plaintiffs' attempt to weave together language from three cases does not clearly establish that the plaintiffs had an ownership interest that rises to the level of a naked owner, creditor, or mortgagee, in a public road, particularly a portion of the road that did not even abut their property.

At oral argument, the plaintiffs relied on Simi Investment Co. v. Harris County, Texas, as establishing a property right in a public street. 236 F.3d 240, 250 (5th Cir. 2000). They are correct that, under Texas law, an abutting property has an easement of access to a public street which is a property right constitutionally protected under the Fourteenth Amendment. Id. We assume without deciding that Louisiana law establishes a similar servitude. However, no precedent clearly establishes that such a servitude entitles its owner to notice by mail. It is not clearly established that the notice provided by the police jurors in the local newspaper was insufficient for owners of property that abuts a public road where a portion of the road, not adjacent to their property, is being abandoned.

Finally, the police jury's actions were objectively reasonable. They published notice in their official journal, the Colfax Chronicle, and at least one police jury member spoke to some residents of Youngblood Road. Publication in the Colfax Chronicle was the police jury's established procedure for giving notice of a road abandonment proceeding. The police jurors were entitled to qualified immunity in their individual capacities.[2]

---

[2] Because this Court holds that the police jurors are entitled to legislative and qualified immunity, there is no need to address the issue of quasi-judicial immunity.

14

C.     Improper Abandonment

The plaintiffs also bring a claim of improper abandonment under Louisiana law.

> In order to determine state law, federal courts look to final decisions of the highest court of the state. When there is no ruling by the state's highest court, it is the duty of the federal court to determine as best it can, what the highest court of the state would decide.

Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co., 953 F.2d 985, 988 (5th Cir. 1992). Louisiana law states:

> The parish governing authorities and municipal corporations of the state, except the parish of Orleans, may revoke and set aside the dedication of all roads, streets, and alleyways laid out and dedicated to public use within the respective limits, when the roads, streets, and alleyways have been abandoned or are no longer needed for public purposes.

LA. REV. STAT. ANN. § 48:701. "This statute plainly confers discretionary power upon the appropriate authorities to revoke the dedication of roads, streets and alleyways." State ex rel. Torrance v. City of Shreveport, 93 So. 2d 187, 189 (La. 1957). However, "any interested party may challenge as unreasonable and arbitrary the abandonment of a public roadway by the governing body of a parish or municipality." Luneau v. Avoyelles Parish Police Jury, 196 So. 2d 631, 633 (La. App. 1967). In reviewing such decisions, "the courts require that the plaintiff allege and prove that the action of the governing body was capricious or arbitrary or based upon substantially incomplete or incorrect information." Id. A court "may examine the circumstances surrounding the abandonment of a permanent roadway to determine whether at the time of the governing body's decision to abandon the road the roadway has been abandoned or is no longer needed for public purposes." Id.

The Louisiana Court of Appeal, Third Circuit held that a police jury acted arbitrarily and capriciously in abandoning a roadway when only one police juror

had firsthand knowledge about the use of the road. Id. The court noted in Luneau that the trial judge had found that "there was a definite and continuing need for this particular road." Id. at 634. Also, it could find "no case upholding the abandonment of an established and well-maintained public road, and certainly not where that road constitutes the only means whereby an abutting landowner may enter or leave his property." Id.

Similarly, in Sylvester v. St. Landry Parish Police Jury, the court held that a policy jury's abandonment of a public road was arbitrary and capricious. 461 So. 2d 534, 539 (La. App. 1984). The court noted that the jurors voted without any knowledge of the roadway, except for the one juror who had presented the abandonment measure because his ward lacked funds to maintain the road. Id. at 538. The other jurors were not even aware that the road was the subject of litigation regarding its dedication as a public road and stated that, "if they had been better informed, they would have probably voted differently." Id. at 538. Although the court here did not note this fact in its analysis, the road at issue was the only access to one party's property. Id. at 535.

The Louisiana Third Circuit held an abandonment of an alley to be arbitrary and capricious after adjoining property owners had testified to "weekly and daily use of the alley" and one owner, a bank, paid to have the alley paved. Am. Sec. Bank of Ville Platte v. Rebokus, 527 So. 2d 71, 73 (La. App. 1988). Approximately 150 of the bank's customers "signed petitions to keep the alley open, stating that it was necessary for access to the Bank's drive-through window." Id.

It is not disputed that (1) the police jury considered the cost of maintenance in its decision to abandon a portion of Youngblood Road, (2) the plaintiffs' properties did not abut the portion of the road that was closed, and (3) the plaintiffs had access to their properties through the portion of the road that remained open.

Although there are no Louisiana Supreme Court cases directly on point to guide us, we find the Louisiana Third Circuit cases to be persuasive in determining what the state's highest court would decide. The Grant Parish Police Jury's decision has one similarity with two of the three cases cited where a police jury's abandonment decision was arbitrary and capricious. Like the police juries in Luneau and Sylvester, only one police juror had significant knowledge about the road and he presented the measure to close the road. Like the presenting juror in Sylvester, Delong claimed that the closure would save the parish money.

However, the Grant Parish decision is significantly different in other aspects from those cases. Most importantly, the closed portion of Youngblood Road was not the only access to the plaintiffs' properties as it was in Sylvester and Luneau. The Grant Parish plaintiffs have not been denied access to their properties by the closure; rather, they have been denied a second access route that is, at times, more convenient. Thus, there is no definite and continuing need for the closed portion of Youngblood Road, unlike the road in Luneau. Unlike the police jury in Sylvester, the Grant Parish police jurors have not indicated that they would have voted differently had they been presented with other facts. To the contrary, they have indicated additional reasons supporting their original decision, such as deterring criminal activity and promoting safety. Although the record does not show definitively that those issues were considered by the jury in its decision, it does distinguish this case from Sylvester and suggests that the Grant Parish decision was not arbitrary and capricious.

Finally, the Grant Parish decision differs significantly from that in Rebokus where 150 customers claimed they used the closed alley to access a bank's drive-through window. The facts concerning the use of the northern portion of Youngblood Road in a rural part of Grant Parish differ significantly

from the continuing need to use an alley for access to a substantial portion of a bank's business.

Therefore, we hold the Grant Parish Police Jury's decision to abandon maintenance on the northern portion of Youngblood Road was reasonable, and, therefore, the police jury's abandonment of the roadway was proper.

## IV. CONCLUSION

The district court's denial of the defendant's motion for summary judgment on the issue of absolute legislative immunity is REVERSED. The district court's denial of the defendant's motion for summary judgment on the issue of qualified immunity is REVERSED. The district court's grant of the defendant's motion for summary judgment on the issue of whether the police jury's decision was arbitrary and capricious is AFFIRMED. The case is REMANDED for resolution of the plaintiffs' Fifth Amendment and Fourteenth Amendment takings and due process claims against the police jury and its members in their official capacities.