A separate order will issue.

**In re ROMAN FOREST PUBLIC UTILITY DISTRICT NO. 3, Debtor.**

**Roman Forest Public Utility District No. 3, Plaintiff,**

**v.**

**Roman Forest Consolidated Public Utility District, William B. Frederick, Billy W. Goss, Keith Mumbers, Joseph Alexander, and Charles Meek, Defendants.**

**Bankruptcy No. 03–36168–H4–9. Adversary No. 04–3269.**

United States Bankruptcy Court, S.D. Texas, Houston Division.

Feb. 8, 2005.

David Ronald Jones, Porter & Hedges, LLP, Houston, TX, for debtor.

## MEMORANDUM OPINION ON INDIVIDUAL DEFENDANTS' MOTION TO QUASH OR LIMIT DEPOSITIONS (DOC. # 34)

JEFF BOHM, Bankruptcy Judge.

William B. Frederick, Billy W. Goss, Keith Humbert (incorrectly named in the adversary proceeding as "Mumbers"), Joseph Alexander, and Charles Meek (the Individual Defendants) filed a Motion to Quash or Limit Depositions (the Motion) in the above-styled adversary proceeding. The Individual Defendants' position is that, as directors of Roman Forest Consolidated Public Utility District (PUD), they are immune from a deposition. This Court disagrees for the reasons stated herein.[1] This Court holds that Roman Forest Public Utility District No. 3, the Debtor/Plaintiff (the Debtor), a municipal water district, is entitled to depose the Individual Defendants on all subjects and issues raised in the Debtor's pending complaint.

### I. FACTUAL BACKGROUND AND RELEVANT PROCEDURAL HISTORY

At the hearing on the Motion, neither party called any witnesses to establish any facts. Rather, the relevant facts were established by reference to the record in this adversary proceeding and in the Debtor's Chapter 9 case, and by statements and assertions made by counsel of record in pleadings and at the hearing, which constitute judicial admissions. All of the written documents referenced in this opinion are attached as exhibits to pleadings filed by

one or all parties, and none of the parties dispute the authenticity of these documents.

The relevant facts, in chronological order, are as follows:

1. On May 11, 1972, PUD and the Debtor entered into a written contract for forty years whereby PUD would provide the Debtor with water and waste disposal services (the Contract).

2. On May 1, 2003, the Debtor filed a petition for relief under chapter 9 of the Bankruptcy Code.[2]

3. On May 30, 2003, while the automatic stay was in effect, PUD's counsel sent a letter to the Debtor expressly stating that: (a) the Contract is no longer valid or enforceable; and (b) PUD would not provide water or sewer service to any water or sewer connections within the Debtor's district not being served as of the date of the letter.

4. On December 30, 2003, while the automatic stay was still in effect, PUD filed suit against the Debtor in the District Court of Montgomery County, Texas (the State Court Suit). PUD's petition candidly concedes that since the date that the Debtor and PUD entered into the Contract, the cost of providing water and waste disposal services has risen and, as a result of these increased costs, the rates in the Contract are simply too low. In the State Court Suit, PUD requests the court to de-

---

**1.** This Court has jurisdiction in this matter under 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and United States District Court for the Southern District of Texas General Order 2002–2 referring all Bankruptcy cases and proceedings to the Bankruptcy Judges of this

district. This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (B), (C), (E), (L), and (O).

**2.** All references to the Bankruptcy Code herein are references to 11 U.S.C. § 101 et seq.

clare that the Contract is unenforceable and that PUD is not bound by the terms which cap the rates that PUD may charge. PUD also requests the state court to enjoin the Debtor from authorizing any residents of the Debtor's district to connect to the water system.

5. On December 30, 2003, once again while the automatic stay was in effect, PUD filed an application for temporary injunction in the Montgomery County District Court. This Court issued an order on this same day scheduling a hearing on PUD's application for January 16, 2004.

6. On January 12, 2004, the Debtor filed a Suggestion of Bankruptcy in the State Court Suit setting forth that the Debtor had filed a bankruptcy petition in May of 2003.

7. On March 31, 2004, PUD filed a Motion for Relief from the Stay with this Court. In the Motion for Relief, PUD requested this Court to declare that the automatic stay is inapplicable to the State Court Suit or, alternatively, to terminate the stay and permit PUD to prosecute the State Court Suit.

8. On April 2, 2004, the Debtor filed a complaint in this Court (the Complaint) against PUD and the Individual Defendants alleging that PUD and its board of directors (*i.e.*, all of the Individual Defendants), by taking the actions described in paragraphs 3, 4, and 5 above, have (a) violated the automatic stay; (b) sold the water and sewer capacity to third parties at a profit and thereby committed wrongful conversion for which they are liable; and (c) tortiously interfered with the Debtor's contractual rights by wrongfully terminating the Contract and interfering with negotiations with developers that would form the basis of a plan of adjustment in the Debtor's chapter 9 case. The Complaint also alleges that PUD has breached the Contract by refusing to provide water and sewer supply to all landowners within the Debtor's district; and that the Individual Defendants have negligently sold water and sewer capacity earmarked for the Debtor to third parties in order to profit from the Debtor's property rights. Finally, the Complaint requests this Court to issue an injunction requiring PUD to perform its obligations under the Contract.[3]

9. On April 5, 2004, the Debtor filed on Objection to the Motion to Lift Stay. The Debtor requested this Court to deny the Motion for Relief from the Stay.[4]

10. On April 27, 2004, this Court (the Honorable William Greendyke) held a hearing on PUD's Motion for Relief from the Stay and denied the motion.

11. On April 30, 2004, the order denying PUD's Motion for Relief from the Stay was entered on the docket.

12. On May 3, 2004, the Individual Defendants filed in this Court a

---

[3] The Complaint initiated an adversary proceeding in this Court, which was assigned Adversary No. 04–3269 (the Adversary Proceeding).

[4] On April 6, 2004, PUD filed an Amended Motion for Relief from the Stay. This amended motion contains the exact same allegations and request for relief as the initial motion. The only difference between the two pleadings is that the amended motion contains a paragraph giving notice that the hearing date has been set for April 27, 2004 and that responses need to be filed at least 5 days prior to the hearing.

Motion to Dismiss (Doc. # 12) seeking to have themselves dismissed as parties to the Adversary Proceeding. On this same day, the Individual Defendants, together with PUD, filed an answer to the Complaint. This pleading is entitled "Answer of Defendants" (the Joint Answer). In addition to responding to the allegations in the Complaint, the Joint Answer also contains a counterclaim which is entitled "Counterclaim of Defendants" (the Counterclaim).[5] The Counterclaim asserts that: (a) performance of the Contract should not be required due to laches on the part of the Debtor; (b) the Contract is void for lack of consideration; (c) the Contract should be terminated because it presents a severe economic hardship for PUD; and (d) the Contract should be declared void because the specific terms under the Contract which cap the rates are no longer valid under applicable law.

13. On May 7, 2004, the Debtor filed an Objection to the Motion to Dismiss (Doc. # 13).

14. On July 9, 2004, the clerk of this Court entered a Comprehensive Scheduling, Pre–Trial and Trial Order (Scheduling Order), signed by the Honorable Robert C. McGuire. (Doc. # 15). Under the Scheduling Order, the deadline for completing discovery was January 31, 2005, and all dispositive motions are to be filed by February 14, 2005. A pre-trial conference is to be held on February 24, 2005 and trial is to be held during the week of March 14, 2005.

15. On August 9, 2004, PUD filed a Motion to Abstain (Doc. # 20) in the Adversary Proceeding.

16. On August 20, 2004, the Debtor filed an Objection to the Motion to Abstain (Doc. # 24).

17. On August 30, 2004, this Court (the Honorable Robert C. McGuire) held a hearing on the Motion to

5. The Court notes that on January 21, 2005, the Individual Defendants filed a pleading in the Adversary Proceeding entitled "Answer of Individual Defendants Frederick, Goss, Mumbers, Alexander and Meek." In this pleading, the Individual Defendants assert that they filed the Joint Answer only in their official capacities as directors of PUD and are for the first time answering the Complaint in their individual capacities. Yet, the Joint Answer is clearly entitled "Answer of *Defendants*" (emphasis added), and this pleading contains a counterclaim that is entitled "Counterclaim of *Defendants*" (emphasis added). Moreover, throughout the entire Joint Answer, each paragraph refers to "Defendants," not "Defendant." Accordingly, it appears that the Individual Defendants did, in fact, file an answer and counterclaim on May 3, 2004 in their individual capacities. The only argument that they did not do so is that in the Joint Answer, the very first sentence states that the Individual Defendants file the answer as PUD's directors "as their response may be appropriate." In the Court's view, this language is insufficient to hold that they were not filing the answer in their individual capacities, particularly when the same sentence states that the answer is being filed subject to the Motion to Dismiss—a pleading, which was filed solely by the Individual Defendants in their individual capacities. Since the Motion to Dismiss was denied, this Court is of the view that the Joint Answer constitutes the pleading in which the Individual Defendants filed their answer and counterclaim under FED. R. BANKR. P. 7008(a). Accordingly, the Individual Defendants have requested this Court to adjudicate their claims against this chapter 9 estate. In the Counterclaim, the Individual Defendants failed to set forth whether the Counterclaim is a core or non-core proceeding, as required by FED. R. BANKR. P. 7008(a). This Court believes that the Counterclaim is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O). Accordingly, the Individual Defendants have subjected themselves to this Court's jurisdiction.

Dismiss and the Motion to Abstain and denied both Motions.

18. On August 31, 2004, the order denying the two motions was entered on the docket (Doc. # 29).

19. On December 29, 2004, the Debtor served subpoenas on the Individual Defendants commanding their appearance for depositions on the 26th, 28th and 31st of January, 2005.

20. On January 21, 2005, the Individual Defendants filed their Motion to Quash or Limit Depositions (Doc. # 34).

21. On January 28, 2005, the Debtor filed its Objection to the Motion to Quash or Limit Depositions (Doc. # 37).

22. On January 31, 2005, the Individual Defendants filed a Response to the Debtor's Objection (Doc. # 38).

23. On February 1, 2005, a hearing was held on the Individual Defendants' Motion to Quash or Limit Depositions (Doc. # 34), the Debtor's Objection (Doc. # 37), and the Individual Defendants' Response (Doc. # 38). This Court denied the Individual Defendants' Motion to Quash at the hearing.

## II. DISCUSSION

### A. Legislative Immunity does not Shield the Individual Defendants from Deposition

■ The Individual Defendants put forth three arguments as to why they are not subject to a deposition. First, they assert that they are entitled to legislative immunity. As directors of a utility district, which they contend possesses a legislative or quasi-legislative function,[6] they claim to be acting in a capacity comparable to that of a legislator; therefore, they, like legislators, are completely protected from suit and discovery.

In *Hughes v. Tarrant County of Texas*, 948 F.2d 918, 921 (5th Cir.1991), the Fifth Circuit applied two separate tests to determine if absolute legislative immunity applies. The first test, which focuses on the nature of the facts used to reach the decision, is as follows:

If the underlying facts on which the decision is based are "legislative facts," such as generalizations concerning a policy or state of affairs, then the decision is legislative. If the facts used in the decisionmaking [sic] are more specific, such as those that relate to particular individuals or situations, then the decision is administrative.

*Id.* Thus, if the decision is legislative in nature, then the Individual Defendants receive immunity; if the decision is administrative in nature, then the Individual Defendants do not receive immunity. *Id.*

In the case at bar, the key fact on which the Individual Defendants based their decision to authorize PUD to terminate the Contract[7] is the rising cost of providing water and sewer service. PUD's Original Petition in the State Court Suit under-

---

6. Whether PUD possesses legislative or quasi-legislative functions is not at issue. The Court is operating under the presumption that PUD does possess such a function. *See Kaplan v. Clear Lake City Water Auth.*, 794 F.2d 1059, 1064 (5th Cir.1986).

7. In fact, the Individual Defendants, in their capacities as directors for PUD, made two decisions. The first was to send the May 30, 2003 letter unequivocally informing the Debtor that the Contract was no longer valid and that PUD would not provide water or sewer service to any connections not already receiving such service. The second decision was to file on December 30, 2003 the State Court Suit, in which PUD seeks a declaratory judg-

scores this point: "Over the course of thirty years and as a result of dramatic changes in environmental laws and other legal requirements in this area, the cost of providing these services has increased substantially." (¶ IV of Original Petition.)

This language leaves little doubt that the Individual Defendants decided to have PUD file the State Court Suit based on specific facts of an individual situation and not based on general facts regarding any policy; the decision was based on the fact that the cost of providing services under the Contract had risen too much in their view. Moreover, the Individual Defendants' decision to authorize PUD to file the State Court Suit did not purport to establish a general policy; rather, the filing of the State Court Suit was particular to the Debtor. The Debtor, and only the Debtor, is the defendant in the State Court Suit, and the relief requested is that the Contract—which is an agreement particular solely to the Debtor—be declared unenforceable. Accordingly, under the first test articulated in *Hughes*, the Individual Defendants' decision is administrative; therefore, the Individual Defendants have no legislative immunity.

The Fifth Circuit's second test, which focuses on the particularity of the impact of the state action, is as follows:

> If the action involves establishment of a general policy, it is legislative; if the action single[s] out specific individuals and affect[s] them differently from others, it is administrative.

*Id.*

In the instant case, the Individual Defendants' action does not involve the establishment of a general policy. Rather, by

authorizing PUD to sue the Debtor in order to terminate the Contract, the action of filing the State Court Suit singles out a specific entity—the Debtor—and treats it differently than other public utility districts. Accordingly, under the second test, the Individual Defendants' action of authorizing the filing of the State Court Suit is not legislative, but rather administrative. Therefore, the Individual Defendants are not shielded by the doctrine of absolute legislative immunity.

**B. Qualified Immunity does not Shield Individual Defendants from Deposition**

 Even if the Individual Defendants do not have absolute legislative immunity, they next contend that they have qualified immunity. Government officials performing discretionary functions receive qualified immunity—*i.e.*, are shielded from liability for civil damages—so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Kaplan*, 794 F.2d at 1066 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 817—18, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

 The automatic stay imposed by 11 U.S.C. § 362 is unquestionably a clearly established statutory right under the Bankruptcy Code. The sending of the May 30, 2003 letter and the filing of the State Court Suit on December 30, 2003, both of which actions could not have occurred without the express authorization of the Individual Defendants, violated the automatic stay. Hence, the conduct of the Individual Defendants has violated a clearly established statutory right.

---

ment that the Contract is unenforceable. Apparently, between May 30, 2003 and December 30, 2003, the Individual Defendants, in their capacities as directors for PUD, had a change of heart and decided that the unequivocal decision set forth in the letter (which said nothing about seeking a court order terminating the Contract) needed to be blessed by the Montgomery County District Court. For purposes of the two tests articulated in *Hughes*, this Court focuses on the decision to file the State Court Suit.

■ The next inquiry is whether the Individual Defendants knew, or should have known, that the automatic stay was in effect when the letter was sent on May 30, 2003 and when the State Court Suit was filed on December 30, 2003 The Complaint alleges that the Individual Defendants, in their capacities as directors of PUD, intentionally and knowingly violated the automatic stay. (¶ 18 of Complaint.) In determining whether qualified immunity exists, the facts should be construed in the light most favorable to the party asserting the injury. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). Accordingly, for purposes of ruling on the Individual Defendants' Motion to Quash, this Court must construe the alleged facts in the light most favorable to the Debtor. In this instance, the Court must therefore accept as true the Debtor's allegations that the Individual Defendants intentionally and knowingly violated the automatic stay.

Under these circumstances, the Individual Defendants are not entitled to qualified immunity. The automatic stay is a clearly established statutory right the existence of which the Individual Defendants were aware when they authorized the sending of the May 30, 2003 letter and the filing of the State Court Suit on December 30, 2003.[8]

**C. § 101.106 of the Texas Tort Claims Act does not Bar Debtor's Claims Against Individual Defendants and therefore does not Shield Individual Defendants from Deposition**

■ The Individual Defendants finally contend that they are immune from being deposed because § 101.106 (entitled Election of Remedies) of the Texas Civil Practice and Remedies Code bars the claims asserted by the Debtor in the Complaint. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.106 (2004). This Court disagrees for two reasons. First, this statute concerns suits filed under the Texas Tort Claims Act, and it provides for dismissal of individual employees from a suit if certain conditions have been satisfied. In the case at bar, these conditions have not been met. Indeed, the Individual Debtors have already tried to obtain a dismissal of the Complaint against themselves, and they were unsuccessful. Second, even if this statute did apply, it only applies to tort claims under chapter 101 of the Texas Tort Claims Act against the Individual Defendants. The Debtor has asserted non-tort claims against the Individual Defendants as well as tort claims, and therefore even if this statute applied, the Individual Defendants would still be subject to suit on some of the claims asserted in the Debtor's Complaint; because they would still be subject to suit, they would be subject to a deposition on the claims asserted in the suit.

### III. CONCLUSION

The history of this chapter 9 case and the Adversary Proceeding leaves little doubt that neither PUD nor the Individual Defendants want this Court to adjudicate the Complaint. By authorizing PUD to file the Motion for Relief from the Stay, the Individual Defendants hoped this

---

8. The Court wishes to emphasize that its holding is that the Individual Defendants do not have qualified immunity for purposes of the depositions. However, once they have testified at their depositions, and depending upon the testimony adduced at those depositions, the Individual Defendants may be able to assert that the doctrine of qualified immunity applies to them with respect to any or all of the claims brought by the Debtor in the Complaint. The Court leaves the decision as to whether any pleadings should be filed in this regard to the discretion of counsel for the Individual Defendants.

Court would allow PUD to prosecute the State Court Suit. This approach failed. Then the Individual Defendants attempted to obtain a dismissal of the claims against themselves by filing their own Motion to Dismiss. This strategy also failed. Soon thereafter, the Individual Defendants, once again in their capacity as directors of PUD, authorized PUD to file a Motion to Abstain in the hope of convincing this Court to refrain from adjudicating the Complaint and Counterclaim and granting PUD leave to file a second motion for relief from stay so that PUD could obtain this Court's permission to prosecute the State Court Suit. This tactic also failed. Now, at the eleventh hour, on the eve of the discovery deadline, the Individual Defendants have sought to quash the Debtor's deposition notices. This maneuver must also fail: neither absolute legislative immunity, nor qualified immunity, nor section 101.106 of the Texas Civil Practice and Remedies Code shields the Individual Defendants from being deposed. They now need to come to the realization that this Court will adjudicate the Complaint and the Counterclaim, that they are parties in the Adversary Proceeding, and that they are subject to discovery.

■ The allegations made by the Debtor in the Complaint are very serious and involve issues that are fundamental to the bankruptcy process. The Debtor has asserted that the Individual Defendants, in addition to PUD, have intentionally violat-ed the automatic stay. Testimony needs to be adduced at the depositions as to exactly when . the Individual Defendants became aware of the Debtor's bankruptcy filing and therefore the imposition of the automatic stay.[9] Even if the Individual Defendants did not become aware of the filing of the bankruptcy petition until January 12, 2004—the date that the Suggestion of Bankruptcy was filed in the State Court Suit—testimony needs to be adduced as to whether the Individual Defendant have continually violated the automatic stay since January 12, 2004 by committing acts in violation of 11 U.S.C. § 362(a)(3). This section forbids acts to obtain possession of property of the estate, or to obtain possession of property from the estate, or to exercise control over property of the estate. There is no question that the Contract, and the rights of the Debtor under the Contract, constitute property of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 541(a)(1). Hence, the Debtor has the right to examine the Individual Defendants on whether they have committed acts that are in violation of 11 U.S.C. § 362(a)(3).

The Debtor has also alleged that the Individual Defendants have interfered with the Debtor's negotiations with developers that would form the basis of the Debtor's plan in this chapter 9 case. This issue is at the very heart of bankruptcy. Any debtor in a chapter 9, including the Debtor in the case at bar, must have an opportunity to reorganize by proposing a plan; pro-

9. The Individual Defendants have complained in their pleadings and at the hearings that the Debtor failed to list PUD in its schedules and that therefore PUD (and the Individual Defendants) did not receive actual notice of the bankruptcy and the imposition of the automatic stay when the bankruptcy petition was filed. Aside from the fact that under FED. R. BANKR. P. 1007(b)(1) a chapter 9 debtor does not file schedules, the Debtor should still be allowed to examine the Individual Debtors as to whether they had constructive or inquiry notice of the bankruptcy filing. Constructive notice is no less effective than actual notice in determining whether someone has knowledge of the filing of a bankruptcy petition. *In re Texas Tamale Co., Inc.,* 219 B.R. 732, 739 (Bankr.S.D.Tex.1998) ("The Fifth Circuit in a number of opinions has edged away from formal strict compliance with the technical notice requirement.") (citing *Robbins v. Amoco Prod. Co.,* 952 F.2d 901, 908 (5th Cir. 1992)).

posing a plan necessarily involves conducting negotiations with creditors and parties-in-interest and, in some instances, other third parties. For this reason, testimony needs to be adduced as to what the Individual Defendants have done to interfere with the Debtor's negotiations and the extent of the harm, if any. Hence, once again, the Debtor has the right to examine the Individual Defendants.

■ The Court takes note of these two areas of inquiry—the violation of the automatic stay and the interference with plan negotiations—because all of the Complaint's allegations, when boiled down to their essence, involve violations of the automatic stay or interference with the plan process. This Court has jurisdiction to adjudicate these issues pursuant to 28 U.S.C. § 157(b)(2)(A), (C), (E), (L), and (O). *All Trac Transp., Inc. v. Transp. Alliance Bank (In re All Trac Transp., Inc.)*, 306 B.R. 859, 870 (Bankr.N.D.Tex. 2004).[10] Accordingly, the scope of the depositions may include the areas relating to all of the allegations in the Complaint.

Under the existing Scheduling Order, discovery was to be completed by January 31, 2005. Because the Motion to Quash was not filed until January 21, 2005, resulting in the hearing being held on February 1, 2005, the January 31, 2005 deadline must be extended. Accordingly, the discovery deadline is extended to February 10, 2005. The Debtor shall have the right to depose any or all of the Individual Defendants, but each deposition shall not exceed 4 hours in length.

A separate order will be issued consistent with this Memorandum Opinion.

---

10. This Court also has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(B) because the Individual Defendants have filed the Counterclaim against the Debtor and its estate.